UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

ARYEH GUTMAN, Individually and on Behalf of        03 Civ 1570 (JG)(RML)
A to Z HOLDING CORP., A to Z CAPITAL CORP.,
PAZ FRANKLIN COMPANY and WASHINGTON
GREENE ASSOCIATES and, Individually, by 185        **DECLARATION       IN
MARCY, LLC and PARK OFFICES, LLC,                   SUPPORT   OF   CROSS-
                                                    MOTION    TO   COMPEL
                            *Plaintiffs,*           DISCOVERY     AND     IN
                                                    OPPOSITION  TO  MOTION
              -against-                              TO VACATE STAY**

ZALMAN KLEIN, DINA KLEIN, RACHEL BRACH,
RODNEY CAPITAL COMPANY, TOYV CORPORATION,
REPUBLIC CAPITAL GROUP, LLC, ATLAS
FURNITURE MANUFACTURING CORP., A TO Z
HOLDING CORP., A TO Z CAPITAL CORP.,
PAZ FRANKLIN COMPANY, WASHINGTON
GREENE ASSOCIATES, JOHN DOE ENTITIES
1-10 and JOHN DOES 1-10,

                            *Defendants.*
----------------------------------------------------------------X

Eric S. Crusius, Esq., declares under the penalties of perjury pursuant to 28 U.S.C.

§1746, that the foregoing is true and correct:

1.      I am an attorney at law, duly admitted to practice before the New York

State Courts and the United States District Court for the Eastern District of New York

and am a Senior Associate at Oved & Oved LLP, attorneys for the Plaintiffs herein and as

such, am fully familiar with the facts and circumstances herein.

2.      I submit this declaration in opposition to Defendants' motion to vacate the

Hon. John Gleeson's order dated September 25, 2003 staying the various state court

litigations between the parties herein ("Gleeson Order").  A copy of the Gleeson Order is annexed hereto as **Exhibit "A"**.[1]

3.      I also submit this declaration and in support of Plaintiffs' cross-motion to compel Defendants to produce discovery which Plaintiffs demanded one year ago and Defendants have failed to provide since the commencement of this action ***over the past two years*** including the production of the hard drives on Zalman Klein's computers and the electronic files contained on those hard drives.

4.      As discussed in Point I, *infra*, Defendants' motion to vacate the Gleeson Order must be denied because:

>      (1)      Defendants are not harmed by the continuation of the Gleeson Order since:
>
>>                (A) the Gleeson Order stays all statute of limitations[2] and
>>
>>                (B) Defendants can pursue any claims they have against the Plaintiffs in this Court.
>
>      (2)      Even if the Defendants could establish that they were harmed by the Gleeson Order, which they cannot, the vacation of the Gleeson Order while the Discovery Order remains in effect would act as an improper abstention by this Court.

5.      As discussed in Point II, *infra*, Plaintiffs' cross-motion to compel discovery must be granted before relevant documents and electronic files are disposed of

---

[1] In September 2003, the parties also simultaneously entered into an order staying the instant action except for discovery ("Discovery Order") and a confidentiality order ("Confidentiality Order").  Among other things, the Discovery Order prevents any party from filing pleadings or dispositive motions in this action. Copies of the Discovery Order and Confidentiality Order are annexed hereto as **Exhibits "B" and "C"** respectively.

[2] The Gleeson Order provides that "[i]n the event the stay is vacated or modified by this Court, the parties shall be able to proceed and take any action which would have been timely as of September 12, 2003." Gleeson Order, ¶ 3.  Not surprisingly, Defendants do not specify which claims they have which they would be foreclosed from making.

or destroyed since Defendants have failed to comply with the Discovery Order and any of Plaintiffs' specific discovery demands which have been outstanding for over ***one year***. Only through compliance with the Discovery Order and Plaintiffs' discovery demands, will the goals of the Gleeson Order be achieved.

## BACKGROUND

6.     For most of Mr. Klein's thirty year relationship with Mr. Gutman, Mr. Klein, in concert with dozens of other people and entities abused his position of trust with Mr. Gutman and orchestrated a complicated scheme of fraudulent transfers of properties and cash while setting up mortgages through real and shell entities and strawpeople to hide his actual ownership in assets which equally belonged to Mr. Gutman and the entities they owned together.[3]

7.     These schemes necessarily involved illegal activities including mail fraud, wire fraud, bank fraud and extortion.[4]

8.     Despite Mr. Klein's active concealment of the massive fraud perpetrated by him and the numerous people and entities involved in their enterprise, Mr. Gutman began to discover their web of fraud and illegalities.  Immediately, Mr. Gutman brought an action in Kings Supreme Court against Mr. Klein and some of the entities they owned

---

[3] This is clearly not a simple business dispute between two business partners as Mr. Finkel claims, but is a case involving dozens of people and entities.  *See* Affirmation of Richard Finkel, Esq. in support of Defendants' motion to vacate the Gleeson Order ("Finkel Aff."), ¶2.  In fact, in Mr. Klein's own submissions to this Court listing entities and people involved in these matters, he himself listed dozens of people and entities which he thinks are involved in this action.  A copy of Mr. Klein's list is annexed hereto as **Exhibit "D"**.

[4] Each of these illegal activities alone are predicate illegal violations required by the RICO Act.

3

together.[5]  Mr. Klein responded by bringing three actions in Kings Supreme Court in his own name and other actions by way of his surrogates.[6]

9.      Finally realizing the depth and the nature of the massive and inter-related web of deceit and illegality orchestrated by Mr. Klein and his surrogates and strawpeople, Mr. Gutman initiated the instant action in Federal Court in 2003 pursuant to the RICO Act.

10.     Based on the unwieldy nature of all the piecemeal litigations between the parties, the fact that all the claims between the parties were now being litigated in Federal Court and the fact that Plaintiffs' claims involved federal statutes, Judge Gleeson signed the Gleeson Order staying all the state court actions.

11.     Further, because of the massive and complex scheme perpetrated by Mr. Klein and his co-conspirators, rigorous and complete discovery was required.

12.     As such, as mentioned, *supra*, Judge Gleeson signed the Discovery Order which required disclosure of:

- Information and documents concerning *__all__* transactions, including the sale of real estate, assignment of real estate, foreclosures, mortgages, satisfactions of mortgages, refinancings, formations of corporations by *__January 20, 2004__*.  Discovery Order ¶ 3.

- Real estate transactions closing documents, bank records and corporate and business books and records for each party identified by Plaintiff as being relevant by *__February 23, 2004__*.[7]  Discovery Order ¶ 6.

---

[5] *Gutman v. A to Z Holding Corp., et al.*, Kings Supreme Index No. 50105/99.

[6] *Klein v. Gutman, et al.* (Kings Supreme Index No. 35890/01); *Klein v. Menachem Gutman, et al.* (Kings Supreme Index No. 47485/01); *Klein v. Gutman, et al.* (Kings Supreme Index No. 50292/02).  Unlike the action in footnote three and the three actions above in this footnote, these two additional actions brought by Mr. Klein's surrogates were not stayed by the Gleeson Order: *SN Realty as Assignee of Zalman Klein v. 185 Marcy* (Kings Supreme Index No. 23119/01); *H. Gutman v. A. Gutman, et al.* (Kings Supreme Index No. 19419/03).

[7] The Discovery Order also required the responding party to order or subpoena any documents from a bank or other third party which they did not possess so it could be turned over to the demanding party.  There is

4

13.     In violation of the Discovery Order, Defendants failed to provide *any* documents for many of the entities forcing Plaintiffs, at their own expense, to send out hundreds of subpoenas to banks, title companies, individuals and entities.[8]

14.     In addition, on October 28, 2004, at Mr. Klein's deposition, he admitted possessing relevant data on his computer which he never turned over despite the Discovery Order.  Plaintiffs specifically demanded that all electronic files be disclosed to Plaintiffs immediately and warned Defendants against altering or deleting any demanded data and information.

15.     During the course of Mr. Klein's deposition, Plaintiffs orally demanded numerous other documents which Defendants had been obligated to turn over to Plaintiffs.

16.     After nearly three weeks without a response from Defendants, on November 21, 2005, Plaintiffs were forced to serve a written demand on counsel demanding "all electronic Quicken files or electronic financial files kept by Mr. Klein." A copy of the letter which outlined a myriad of demands which Defendants had failed to comply with and defaulted on ("Default Letter") is annexed hereto as **Exhibit "E"**.

17.     In the Default Letter, Plaintiffs also insisted on the immediate disclosure of numerous other outstanding demands including:

> (1) Documents reflecting Mr. Klein's percentage ownership in Merit Investment;

---

no indication that Defendants ever undertook this obligation and Plaintiffs ever received any documents which Defendants obtained by this procedure.

[8] To further the burden on Plaintiffs and continue with their obstructionist patterns, Defendants often aided "third-parties" in objecting to subpoenaed information which Plaintiffs would have been entitled to receive from Defendants themselves pursuant to the Discovery Order.

(2) Documents reflecting purchase of lot in 1988 or 1989 of a vacant lot in Monsey, New York by Upstate Homestead Realty;

(3) Documents reflecting payment of funds by Zalman Klein to Benjamin Klein for house and Simon & Mindy Klein for Lakewood, NJ apartment;

(4) Any and all documents regarding any outstanding loans held by Mr. Klein or an entity he has an ownership interest in;

(5) All K-1's received by Mr. Klein for United (Small) Debt;

(6) Documents regarding any loans made to G.S. Capital;

(7) All corporate records for Secor Homes and Upstate Homestead Realty including corporate books, records and New York State certificates of incorporation;

(8) Any and all documents regarding Aspen Boulder; and

(9) Documents reflecting purchase and assumption of mortgage by Aspen Boulder of 1634 57th Street in Brooklyn.

18.     After nearly one year, Defendants **have failed to disclose one document** in response to the Default Letter.[9]

19.     Further, Defendants have failed to produce Defendant Dina Klein despite their clear obligations to do so and despite the fact that besides being a party to this litigation, Dina Klein has had a significant role in Mr. Klein's web of deceit as an officer of many of the entities and the signatory to numerous checks dispensing funds belonging to entities co-owned by Mr. Gutman and Mr. Klein.

20.     While a mutually agreeable date of February 4, 2005 had been scheduled by the parties, Defendants requested an adjournment of Dina Klein's deposition and Plaintiffs consented on the condition that it be immediately rescheduled.

---

[9] Defendants' time to object to any of these demands has also long passed. Plaintiffs also sent another letter to Mr. Finkel on January 5, 2005 demanding immediate compliance with these demands in addition to other relevant production. The letter also enclosed a subpoena for Dina Klein's deposition noticed for February 8, 2005, which was subsequently rescheduled by the parties to February 4, 2005 before being cancelled by Defendants. A copy of this letter is annexed hereto as **Exhibit "F"**.

21.     Now over nine months later, Defendants never produced Dina Klein for a deposition despite numerous oral and written demands.  A copy of a letter dated February 1, 2005 to Mr. Finkel requesting a new date for Mrs. Klein's deposition is annexed hereto as **Exhibit "G"**.

22.     Defendants' clear breach of their obligations pursuant to the Federal Rules of Civil Procedure and the Discovery Order necessitates a new condensed discovery schedule with severe penalties for parties not in compliance, following which time Plaintiffs' can amend their complaint and Defendants can file an answer and assert any counterclaims based on documents and facts learned during this discovery schedule, while the Gleeson Order remains in full force and effect.

## ARGUMENT

### POINT I

### THE GLEESON ORDER MUST NOT BE VACATED

23.     Defendants' motion to vacate the Gleeson Order must be denied since Defendants are not harmed by the continuation of the Gleeson Order since (1) the Gleeson Order stays all statute of limitations and (2) Defendants can pursue any claims against the Plaintiffs in this Court.

24.     Even if Defendants were able to establish that they were somehow harmed by the Gleeson Order, vacation of the Gleeson Order while the Discovery Order remains in effect would act as an improper abstention by this Court.

**A.     THE DEFENDANTS ARE NOT HARMED BY
        THE CONTINUATION OF THE GLEESON ORDER**

25.     The Defendants' primary argument for vacating the Gleeson Order is that they are being foreclosed from asserting claims because of the impending closure of

7

statutes of limitation.[10]   While at first glance, this argument may appear to have some validity, it is completely without merit, *since Defendants fail to mention that the Gleeson Order, which counsel for Defendants drafted,* provides that

> **"[i]n the event the stay is vacated or modified by this Court, the parties shall be able to proceed and take any action which would have been timely as of September 12, 2003."** Gleeson Order, ¶ 3.

26.   As such, there are no claims which Defendants had against the Plaintiffs on September 13, 2003 which they do not have today, will not have tomorrow or in ten years from now if the Gleeson Order is still in effect.  As such, Defendants can not establish that they are harmed by the Gleeson Order for this reason.

27.   Defendants also vaguely argue that the continuation of Gleeson Order is harming them because it is depriving them of monies from properties and businesses they allegedly are entitled to.  Besides the fact that this is the first time in two years they have alleged this to be the case and that Defendants offer no specifics to substantiate this meritless claim, Defendants can not establish that they are being harmed by the Gleeson Order for this reason, since Defendants are free to assert any claims they have as counterclaims against the Plaintiffs.[11]

28.   Accordingly, as Defendants have not offered a bona fide way they are being harmed by the Gleeson Order, there is no valid reason to vacate it.

---

[10] *See* Finkel Aff., ¶ 29.

[11] Even if it were true, it is not a ground to vacate an Order consented to by parties represented by able counsel.

**B.     VACATING THE GLEESON ORDER WILL ACT
        AS AN IMPROPER ABSTENTION BY THIS COURT**

29.     Even if Defendants were able to establish that they are being harmed by the Gleeson Order, which they have not, doing so would be an improper abstention by this Court.

30.     The Gleeson Order is staying the state court controversies between the parties while the Discovery Order is staying the instant action including the prevention of the filing of any amended or responsive pleadings.[12]

31.     It is important to note that Defendants are seeking <u>only</u> a vacation of the Gleeson Order which would allow Defendants to prosecute the state actions while the instant RICO Action is stayed.

32.     Thus, Defendant are in effect seeking an improper abstention by this Court.

33.     This doctrine, known commonly as "abstention" only allows for a federal court to restrain from determining a controversy before it, if a party (in this case, the Defendants) can establish that the six elements enunciated by the Supreme Court in *Colo. River Conservation Dist. v. United States* weigh in their favor.  424 U.S. 800 (1976). Defendants ***can not establish that any***, let alone all six weigh in their favor.

34.     When weighing the six factors, the balance is "heavily weighted in favor of the exercise of jurisdiction" and it is the Defendants' burden to establish that these factors fall in their favor.  *Woodford v. Community Agency of Greene County, Inc.* 239 F.3d 517 (2d Cir. 2001) *citing Moses H. Cone Mem. Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 16 (1983).

---

[12] The only exception to this stay was the discovery schedule carved out by the Discovery Order.

35.     The six factors are:

> (1) the assumption of jurisdiction by either court over any res or property;
>
> (2) the inconvenience of the federal forum;
>
> (3) the avoidance of piecemeal litigation;
>
> (4) the order in which jurisdiction was obtained;
>
> (5) whether state or federal law supplies the rule of decision; and
>
> (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.

*Village of Westfield, N.Y. v. Welch*, 170 F.3d 116 (2d Cir. 1999).

36.     Even "the facial neutrality of [the factors enunciated above] is a basis for retaining jurisdiction." *Woodford v. Community Agency of Greene County, Inc.* 239 F.3d 517 (2d Cir. 2001).

37.     With regard to the first factor regarding the location of property, since the location of the Kings Supreme Court and the Eastern District of New York is within the same county, this factor is logically not invoked and is thus neutral.  As stated above, this is thus a basis for retaining jurisdiction.  *Woodford v. Community Agency of Greene County, Inc.* 239 F.3d 517 (2d Cir. 2001).

38.     With regard to the second factor, which is the convenience of the forum, as Judge Gleeson has held, when the "federal court is 'just as convenient' as the state court, [this] factor weighs in favor of retention of the case in federal court." *Flores v. City of New York*, 1999 U.S. Dist. LEXIS 15899 (EDNY 1999, Judge Gleeson).  As such, this factor weighs in favor of retention of jurisdiction.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

ARYEH GUTMAN, Individually and on Behalf of
A to Z HOLDING CORP., A to Z CAPITAL CORP.,
PAZ FRANKLIN COMPANY and WASHINGTON
GREENE ASSOCIATES and, Individually, by 185
MARCY, LLC and PARK OFFICES, LLC,

                                    *Plaintiffs,*

                    -against-

ZALMAN KLEIN, DINA KLEIN, RACHEL BRACH,
RODNEY CAPITAL COMPANY, TOYV CORPORATION,
REPUBLIC CAPITAL GROUP, LLC, ATLAS
FURNITURE MANUFACTURING CORP., A TO Z
HOLDING CORP., A TO Z CAPITAL CORP.,
PAZ FRANKLIN COMPANY, WASHINGTON
GREENE ASSOCIATES, JOHN DOE ENTITIES
1-10 and JOHN DOES 1-10,

                                    *Defendants.*
--------------------------------------------------------------------X

03 Civ 1570 (JG)(RML)

**DECLARATION IN
SUPPORT OF CROSS-
MOTION TO COMPEL
DISCOVERY AND IN
OPPOSITION TO MOTION
TO VACATE STAY**

        Eric S. Crusius, Esq., declares under the penalties of perjury pursuant to 28 U.S.C.

§1746, that the foregoing is true and correct:

        1.      I am an attorney at law, duly admitted to practice before the New York

State Courts and the United States District Court for the Eastern District of New York

and am a Senior Associate at Oved & Oved LLP, attorneys for the Plaintiffs herein and as

such, am fully familiar with the facts and circumstances herein.

        2.      I submit this declaration in opposition to Defendants' motion to vacate the

Hon. John Gleeson's order dated September 25, 2003 staying the various state court

litigations between the parties herein ("Gleeson Order").  A copy of the Gleeson Order is annexed hereto as **Exhibit "A"**.[1]

3.      I also submit this declaration and in support of Plaintiffs' cross-motion to compel Defendants to produce discovery which Plaintiffs demanded one year ago and Defendants have failed to provide since the commencement of this action ***over the past two years*** including the production of the hard drives on Zalman Klein's computers and the electronic files contained on those hard drives.

4.      As discussed in Point I, *infra*, Defendants' motion to vacate the Gleeson Order must be denied because:

> (1)   Defendants are not harmed by the continuation of the Gleeson Order since:
>
> > (A)   the Gleeson Order stays all statute of limitations[2] and
> >
> > (B)   Defendants can pursue any claims they have against the Plaintiffs in this Court.
>
> (2)   Even if the Defendants could establish that they were harmed by the Gleeson Order, which they cannot, the vacation of the Gleeson Order while the Discovery Order remains in effect would act as an improper abstention by this Court.

5.      As discussed in Point II, *infra*, Plaintiffs' cross-motion to compel discovery must be granted before relevant documents and electronic files are disposed of

---

[1] In September 2003, the parties also simultaneously entered into an order staying the instant action except for discovery ("Discovery Order") and a confidentiality order ("Confidentiality Order").  Among other things, the Discovery Order prevents any party from filing pleadings or dispositive motions in this action. Copies of the Discovery Order and Confidentiality Order are annexed hereto as **Exhibits "B" and "C"** respectively.

[2] The Gleeson Order provides that "[i]n the event the stay is vacated or modified by this Court, the parties shall be able to proceed and take any action which would have been timely as of September 12, 2003." Gleeson Order, ¶ 3.  Not surprisingly, Defendants do not specify which claims they have which they would be foreclosed from making.

or destroyed since Defendants have failed to comply with the Discovery Order and any of Plaintiffs' specific discovery demands which have been outstanding for over ***one year***. Only through compliance with the Discovery Order and Plaintiffs' discovery demands, will the goals of the Gleeson Order be achieved.

## BACKGROUND

6.     For most of Mr. Klein's thirty year relationship with Mr. Gutman, Mr. Klein, in concert with dozens of other people and entities abused his position of trust with Mr. Gutman and orchestrated a complicated scheme of fraudulent transfers of properties and cash while setting up mortgages through real and shell entities and strawpeople to hide his actual ownership in assets which equally belonged to Mr. Gutman and the entities they owned together.[3]

7.     These schemes necessarily involved illegal activities including mail fraud, wire fraud, bank fraud and extortion.[4]

8.     Despite Mr. Klein's active concealment of the massive fraud perpetrated by him and the numerous people and entities involved in their enterprise, Mr. Gutman began to discover their web of fraud and illegalities.  Immediately, Mr. Gutman brought an action in Kings Supreme Court against Mr. Klein and some of the entities they owned

---

[3] This is clearly not a simple business dispute between two business partners as Mr. Finkel claims, but is a case involving dozens of people and entities.  *See* Affirmation of Richard Finkel, Esq. in support of Defendants' motion to vacate the Gleeson Order ("Finkel Aff.), ¶2.  In fact, in Mr. Klein's own submissions to this Court listing entities and people involved in these matters, he himself listed dozens of people and entities which he thinks are involved in this action.  A copy of Mr. Klein's list is annexed hereto as **Exhibit "D"**.

[4] Each of these illegal activities alone are predicate illegal violations required by the RICO Act.

together.[5]  Mr. Klein responded by bringing three actions in Kings Supreme Court in his own name and other actions by way of his surrogates.[6]

9.      Finally realizing the depth and the nature of the massive and inter-related web of deceit and illegality orchestrated by Mr. Klein and his surrogates and strawpeople, Mr. Gutman initiated the instant action in Federal Court in 2003 pursuant to the RICO Act.

10.      Based on the unwieldy nature of all the piecemeal litigations between the parties, the fact that all the claims between the parties were now being litigated in Federal Court and the fact that Plaintiffs' claims involved federal statutes, Judge Gleeson signed the Gleeson Order staying all the state court actions.

11.      Further, because of the massive and complex scheme perpetrated by Mr. Klein and his co-conspirators, rigorous and complete discovery was required.

12.      As such, as mentioned, *supra,* Judge Gleeson signed the Discovery Order which required disclosure of:

- Information and documents concerning ***all*** transactions, including the sale of real estate, assignment of real estate, foreclosures, mortgages, satisfactions of mortgages, refinancings, formations of corporations by ***January 20, 2004.***  Discovery Order ¶ 3.

- Real estate transactions closing documents, bank records and corporate and business books and records for each party identified by Plaintiff as being relevant by ***February 23, 2004.***[7]  Discovery Order ¶ 6.

---

[5] *Gutman v. A to Z Holding Corp., et al.,* Kings Supreme Index No. 50105/99.

[6] *Klein v. Gutman, et al.* (Kings Supreme Index No. 35890/01); *Klein v. Menachem Gutman, et al.* (Kings Supreme Index No. 47485/01); *Klein v. Gutman, et al.* (Kings Supreme Index No. 50292/02).  Unlike the action in footnote three and the three actions above in this footnote, these two additional actions brought by Mr. Klein's surrogates were not stayed by the Gleeson Order: *SN Realty as Assignee of Zalman Klein v. 185 Marcy* (Kings Supreme Index No. 23119/01); *H. Gutman v. A. Gutman, et al.* (Kings Supreme Index No. 19419/03).

[7] The Discovery Order also required the responding party to order or subpoena any documents from a bank or other third party which they did not possess so it could be turned over to the demanding party.  There is

13.     In violation of the Discovery Order, Defendants failed to provide **_any_** documents for many of the entities forcing Plaintiffs, at their own expense, to send out hundreds of subpoenas to banks, title companies, individuals and entities.[8]

14.     In addition, on October 28, 2004, at Mr. Klein's deposition, he admitted possessing relevant data on his computer which he never turned over despite the Discovery Order.  Plaintiffs specifically demanded that all electronic files be disclosed to Plaintiffs immediately and warned Defendants against altering or deleting any demanded data and information.

15.     During the course of Mr. Klein's deposition, Plaintiffs orally demanded numerous other documents which Defendants had been obligated to turn over to Plaintiffs.

16.     After nearly three weeks without a response from Defendants, on November 21, 2005, Plaintiffs were forced to serve a written demand on counsel demanding "all electronic Quicken files or electronic financial files kept by Mr. Klein." A copy of the letter which outlined a myriad of demands which Defendants had failed to comply with and defaulted on ("Default Letter") is annexed hereto as **Exhibit "E"**.

17.     In the Default Letter, Plaintiffs also insisted on the immediate disclosure of numerous other outstanding demands including:

> (1) Documents reflecting Mr. Klein's percentage ownership in Merit Investment;

---

no indication that Defendants ever undertook this obligation and Plaintiffs ever received <u>any</u> documents which Defendants obtained by this procedure.

[8] To further the burden on Plaintiffs and continue with their obstructionist patterns, Defendants often aided "third-parties" in objecting to subpoenaed information which Plaintiffs would have been entitled to receive from Defendants themselves pursuant to the Discovery Order.

(2) Documents reflecting purchase of lot in 1988 or 1989 of a vacant lot in Monsey, New York by Upstate Homestead Realty;

(3) Documents reflecting payment of funds by Zalman Klein to Benjamin Klein for house and Simon & Mindy Klein for Lakewood, NJ apartment;

(4) Any and all documents regarding any outstanding loans held by Mr. Klein or an entity he has an ownership interest in;

(5) All K-1's received by Mr. Klein for United (Small) Debt;

(6) Documents regarding any loans made to G.S. Capital;

(7) All corporate records for Secor Homes and Upstate Homestead Realty including corporate books, records and New York State certificates of incorporation;

(8) Any and all documents regarding Aspen Boulder; and

(9) Documents reflecting purchase and assumption of mortgage by Aspen Boulder of 1634 57th Street in Brooklyn.

18.     After nearly one year, Defendants **have failed to disclose one document** in response to the Default Letter.[9]

19.     Further, Defendants have failed to produce Defendant Dina Klein despite their clear obligations to do so and despite the fact that besides being a party to this litigation, Dina Klein has had a significant role in Mr. Klein's web of deceit as an officer of many of the entities and the signatory to numerous checks dispensing funds belonging to entities co-owned by Mr. Gutman and Mr. Klein.

20.     While a mutually agreeable date of February 4, 2005 had been scheduled by the parties, Defendants requested an adjournment of Dina Klein's deposition and Plaintiffs consented on the condition that it be immediately rescheduled.

---

[9] Defendants' time to object to any of these demands has also long passed.  Plaintiffs also sent another letter to Mr. Finkel on January 5, 2005 demanding immediate compliance with these demands in addition to other relevant production.  The letter also enclosed a subpoena for Dina Klein's deposition noticed for February 8, 2005, which was subsequently rescheduled by the parties to February 4, 2005 before being cancelled by Defendants.  A copy of this letter is annexed hereto as **Exhibit "F"**.

21.     Now over nine months later, Defendants never produced Dina Klein for a deposition despite numerous oral and written demands.  A copy of a letter dated February 1, 2005 to Mr. Finkel requesting a new date for Mrs. Klein's deposition is annexed hereto as **Exhibit "G"**.

22.     Defendants' clear breach of their obligations pursuant to the Federal Rules of Civil Procedure and the Discovery Order necessitates a new condensed discovery schedule with severe penalties for parties not in compliance, following which time Plaintiffs' can amend their complaint and Defendants can file an answer and assert any counterclaims based on documents and facts learned during this discovery schedule, while the Gleeson Order remains in full force and effect.

## ARGUMENT

### POINT I

### THE GLEESON ORDER MUST NOT BE VACATED

23.     Defendants' motion to vacate the Gleeson Order must be denied since Defendants are not harmed by the continuation of the Gleeson Order since (1) the Gleeson Order stays all statute of limitations and (2) Defendants can pursue any claims against the Plaintiffs in this Court.

24.     Even if Defendants were able to establish that they were somehow harmed by the Gleeson Order, vacation of the Gleeson Order while the Discovery Order remains in effect would act as an improper abstention by this Court.

**A.     THE DEFENDANTS ARE NOT HARMED BY
THE CONTINUATION OF THE GLEESON ORDER**

25.     The Defendants' primary argument for vacating the Gleeson Order is that they are being foreclosed from asserting claims because of the impending closure of

7

statutes of limitation.[10]   While at first glance, this argument may appear to have some

validity, it is completely without merit, *since Defendants fail to mention that the Gleeson*

*Order, which counsel for Defendants drafted,* provides that

> **"[i]n the event the stay is vacated or modified by this**
> **Court, the parties shall be able to proceed and take any**
> **action which would have been timely as of September**
> **12, 2003."** Gleeson Order, ¶ 3.

26.     As such, there are no claims which Defendants had against the Plaintiffs

on September 13, 2003 which they do not have today, will not have tomorrow or in ten

years from now if the Gleeson Order is still in effect.   As such, Defendants can not

establish that they are harmed by the Gleeson Order for this reason.

27.     Defendants also vaguely argue that the continuation of Gleeson Order is

harming them because it is depriving them of monies from properties and businesses they

allegedly are entitled to.  Besides the fact that this is the first time in two years they have

alleged this to be the case and that Defendants offer no specifics to substantiate this

meritless claim, Defendants can not establish that they are being harmed by the Gleeson

Order for this reason, since Defendants are free to assert any claims they have as

counterclaims against the Plaintiffs.[11]

28.     Accordingly, as Defendants have not offered a bona fide way they are

being harmed by the Gleeson Order, there is no valid reason to vacate it.

---

[10] *See* Finkel Aff., ¶ 29.

[11] Even if it were true, it is not a ground to vacate an Order consented to by parties represented by able counsel.

**B.**     **VACATING THE GLEESON ORDER WILL ACT**
**AS AN IMPROPER ABSTENTION BY THIS COURT**

29.     Even if Defendants were able to establish that they are being harmed by the Gleeson Order, which they have not, doing so would be an improper abstention by this Court.

30.     The Gleeson Order is staying the state court controversies between the parties while the Discovery Order is staying the instant action including the prevention of the filing of any amended or responsive pleadings.[12]

31.     It is important to note that Defendants are seeking <u>only</u> a vacation of the Gleeson Order which would allow Defendants to prosecute the state actions while the instant RICO Action is stayed.

32.     Thus, Defendant are in effect seeking an improper abstention by this Court.

33.     This doctrine, known commonly as "abstention" only allows for a federal court to restrain from determining a controversy before it, if a party (in this case, the Defendants) can establish that the six elements enunciated by the Supreme Court in *Colo. River Conservation Dist. v. United States* weigh in their favor.  424 U.S. 800 (1976). Defendants ***can not establish that any***, let alone all six weigh in their favor.

34.     When weighing the six factors, the balance is "heavily weighted in favor of the exercise of jurisdiction" and it is the Defendants' burden to establish that these factors fall in their favor.  *Woodford v. Community Agency of Greene County, Inc.* 239 F.3d 517 (2d Cir. 2001) *citing Moses H. Cone Mem. Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 16 (1983).

---

[12] The only exception to this stay was the discovery schedule carved out by the Discovery Order.

35.     The six factors are:

> (1) the assumption of jurisdiction by either court over any res or property;
>
> (2) the inconvenience of the federal forum;
>
> (3) the avoidance of piecemeal litigation;
>
> (4) the order in which jurisdiction was obtained;
>
> (5) whether state or federal law supplies the rule of decision; and
>
> (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.

*Village of Westfield, N.Y. v. Welch*, 170 F.3d 116 (2d Cir. 1999).

36.     Even "the facial neutrality of [the factors enunciated above] is a basis for retaining jurisdiction." *Woodford v. Community Agency of Greene County, Inc.* 239 F.3d 517 (2d Cir. 2001).

37.     With regard to the first factor regarding the location of property, since the location of the Kings Supreme Court and the Eastern District of New York is within the same county, this factor is logically not invoked and is thus neutral.  As stated above, this is thus a basis for retaining jurisdiction.  *Woodford v. Community Agency of Greene County, Inc.* 239 F.3d 517 (2d Cir. 2001).

38.     With regard to the second factor, which is the convenience of the forum, as Judge Gleeson has held, when the "federal court is 'just as convenient' as the state court, [this] factor weighs in favor of retention of the case in federal court." *Flores v. City of New York,* 1999 U.S. Dist. LEXIS 15899 (EDNY 1999, Judge Gleeson).  As such, this factor weighs in favor of retention of jurisdiction.

39.     With regard to the third factor regarding the avoidance of piecemeal litigation, the prospect of litigating all the controversies between the parties in one action, as opposed to multiple state court actions weighs heavily against abstention. Vacation of the Gleeson Order will only serve to promulgate the flurry of litigation between the parties and raise the cost of obtaining any resolution tremendously.

40.     With regard to the fourth factor regarding the order in which jurisdiction is obtained, "[t]his factor does not turn exclusively on the sequence in which the cases were filed, but rather in terms of how much progress has been made in the two actions." *Flores v. City of New York,* 1999 U.S. Dist. LEXIS 15899 (EDNY 1999, Judge Gleeson).

41.     With regard to the fifth factor regarding whether federal or state law applies, Plaintiffs have alleged violations of the Federal RICO Act weighing heavily against abstention. *Flores v. City of New York,* 1999 U.S. Dist. LEXIS 15899 (EDNY 1999, Judge Gleeson).

42.     With regard to the sixth factor as to whether a state court can adequately protect a litigant, even when a state court would adequately protect a litigant, "this factor does not militate in favor of abstention.  When this factor comes into play at all, it generally does so in favor of the exercise of federal jurisdiction." *Flores v. City of New York,* 1999 U.S. Dist. LEXIS 15899 (EDNY 1999, Judge Gleeson).

43.     None of the six factors above favor abstention by the Court and thus permit the vacation of the Gleeson Order.[13]

---

[13] Your Honor has also previously echoed exact well settled sentiment that except for an "extraordinary and narrow exception", a federal court must determine the controversies before it. *DMJ Assoc. v. Capasso, 228 F.Supp.2d 223* (EDNY 2002, Mag. Judge Levy).  Further, "[a]bdication of the obligation to decide cases can be justified under this (the abstention) doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." *Show-World Center Inc. v. Walsh,* 438 F. Supp. 642 (SDNY 1977) citing *Colo. River Conservation Dist. v.*

## POINT II

### DEFENDANTS MUST BE MADE TO IMMEDIATE COMPLY WITH PLAINTIFFS' LONG OUTSTANDING DISCOVERY DEMANDS

44.     As described in detail, *supra*, Defendants have failed on numerous occasions to provide discovery to Plaintiffs which they are clearly entitled to.

45.     Most importantly, Plaintiffs immediately seek (1) discovery of the hard drives and electronic files on Zalman Klein's computers (and those belonging to his entities), (2) Dina Klein's deposition and (3) the demands enunciated in the Default Letter.

### A.      PLAINTIFFS ARE ENTITLED TO DISCOVERY OF THE HARD DRIVES ON ZALMAN KLEIN'S COMPUTERS

46.     As discussed in detail, *supra*, the Discovery Order required Defendants to turn over any and all bank and financial records to Plaintiffs by February 2004.

47.     During Mr. Klein's deposition, which took place one year ago, Mr. Klein testified that he had a laptop computer and a regular desktop computer where he kept financial records of various entities he owned and which are at dispute herein including matters involving Paz-Ross Corp. and Upstate Homestead Realty.  This is certainly data Plaintiffs are entitled to no matter whether they are paper documents or on Mr. Klein's computers.

48.     As Mr. Klein has been on notice since the commencement of the initial litigation against him in 1999 that the data on his computers would be subject to discovery, any spoliation of such from that time forward can be subject to strict penalties

---

*United States,* 424 U.S. 800 (1976).  Moreover, the "clearest of justifications" are required for abstention. *Village of Westfield, N.Y. v. Welch,* 170 F.3d 116 (2d Cir. 1999).

including entry of judgment in Plaintiffs' favor. *Residential Funding Corp. v. DeGeorge Financial Corp.,* 306 F.3d 99 (2d Cir., 2002).

49.     Assuming they have not been deleted or disposed of, Mr. Klein must be made to immediately turn over these electronic files as well as the hard drives on his computers.[14]

50.     It is well settled that "[e]lectronic documents are no less subject to paper disclosure than paper records." *Rowe Entertainment, Inc., et al. v. The William Morris Agency, et al.,* 205 F.R.D. 421 (SDNY, 2002).  Even if the electronic data was already produced in paper form, parties are still required to disclose it, with the only limitation being the cost shifting to the demanding party. *Anti-Monopoly, Inc. v. Hasbro, Inc.,* 1996 U.S. Dist. LEXIS 563 (SDNY, 1996).

51.     Courts have routinely ordered the discovery of electronic data in circumstances much more severe than Plaintiffs' demand. *See, i.e. Zubulake v. USB Warburg LLC,* 217 F.R.D. 309 (SDNY, 2003) (Defendant required to immediately produce and bear the cost of producing all relevant optical discs and five back-up tapes even though each back-up tape would take five days to retrieve); *Etzion v. Etzion,* 7 Misc.3d 940 (Nassau, 2005) (Expert ordered to clone responding party's computer hard drives and turn over hard drive to Referee with hard copies of all relevant documents from hard drives turned over to both attorneys); *Rowe Entertainment, Inc., et al. v. The William Morris Agency, et al.,* 205 F.R.D. 421 (SDNY, 2002) (Large companies ordered to produce numerous e-mails.); *Byrne v. Byrne,* 168 Misc.2d 321 (Kings, 1996)

---

[14] Plaintiffs are prepared to enter into a new confidentiality order to specifically protect any information received from Mr. Klein's hard drives and electronic data.

(Demanding party entitled to clone responding party's hard drive which may contain relevant information.).

52.      The fact that Zalman Klein has admitted that his computers contain relevant data and electronic data is no less discoverable than any other kind of data, Plaintiffs' cross-motion calling for the immediate discovery of the hard drives on Mr. Klein's computers must be granted.

**B.      DEFENDANTS MUST IMMEDIATELY COMPLY WITH PLAINTIFFS' OTHER OUTSTANDING DISCOVERY DEMANDS**

53.      Defendants have never objected to the substance of Plaintiffs' discovery demands and offered no excuse for their non-compliance.

54.      For one, Dina Klein was to be produced for deposition back on February 1, 2004.  After requesting and obtaining a postponement of her deposition, Defendants have failed to produce her over the past eight months despite numerous oral and written demands.

55.      As such, her immediate production for a deposition is required.

56.      Further, the other demands outlined in the Default Letter have been outstanding for almost one year and have never been complied with.

57.      As such, their immediate production is required.

58.      Only following the proper production of this discovery, can a new discovery schedule be entered into with penalties for non-compliance.

59.      Based on the above, Defendants' motion must be denied and Plaintiffs' cross-motion granted in its entirety.

Dated: New York, New York
         October 24, 2005

Respectfully Submitted,

Eric S. Crusius, Esq. (ESC-9735)
Oved & Oved LLP
*Attorneys for Plaintiffs*
110 Greene Street, Suite 1102
New York, New York 10012
Tel: 212.226.2376

15