```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
```
ARYEH GUTMAN, Individually and on Behalf
of A to Z HOLDING CORP., A to Z CAPITAL
CORP., PAZ FRANKLIN COMPANY and
WASHINGTON GREENE ASSOCATES and,
Individually, by 185 MARCY, LLC and PARK        REPORT AND
OFFICES, LLC,                                   RECOMMENDATION
                                                AND ORDER
                             Plaintiffs,    03 CV 1570 (BMC) (RML)

     -against-

ZALMAN KLEIN, DINA KLEIN, RACHEL
BRACH, RODNEY CAPITAL COMPANY,
TOYV CORPORATION, REPUBLIC CAPITAL
GROUP, LLC, ATLAS FURNITURE
MANUFACTURING CORP., A TO Z HOLDING
CORP., A TO Z CAPITAL CORP., PAZ FRANKLIN
COMPANY, WASHINGTON GREENE
ASSOCIATES, JOHN DOE ENTITIES 1-10 and
JOHN DOES 1-10,

                             Defendants.
```
----------------------------------------------------------------X
```
LEVY, United States Magistrate Judge:

        Defendants Zalman Klein, Dina Klein, Rodney Capital Company, Atlas Furniture Manufacturing Corp., A to Z Capital Corp., A to Z Holding Corp., Paz Franklin Company, and Washington Greene Associates (the "Klein Defendants") move for an order holding plaintiffs and their counsel, the law firm of Oved & Oved LLP, in contempt of court for allegedly violating a Confidentiality Stipulation and Protective Order, dated September 18, 2003 (the "Confidentiality Stipulation"). Defendants also seek sanctions against plaintiffs and their counsel for the alleged breach. Plaintiffs oppose the motion, arguing that they did not violate the Confidentiality Stipulation and that, at any rate, the Confidentiality Stipulation is unenforceable as a matter of law. For the reasons stated below, I respectfully recommend that defendants'

motion for contempt be denied.[1]  In addition, the parties are ordered to appear before me for a hearing on the issue of sanctions.

## BACKGROUND AND FACTS

Plaintiffs commenced this action in April 2003.  According to the Amended Complaint, in 1967 plaintiff Aryeh Gutman ("Gutman") and defendant Zalman Klein ("Klein") formed A To Z Floors Corp., a floor installation business.  (First Amended Complaint, dated Aug. 29, 2003 ("Am. Compl."), ¶ 14.)  They sold the business in 1984.  (Id.)  During that period, Gutman and Klein also engaged in real estate transactions, including a residential housing construction project called Paz Ross Development Corp., in which they each owned fifty percent of the outstanding shares.  (Id. ¶¶ 16, 17.)  Following the sale of the floor installation business in 1984, the two agreed to form A to Z Capital Corp. to invest the sale proceeds in real estate ventures.  (Id. ¶ 18.)  In the mid-eighties, Gutman and Klein also formed A to Z Holding Corp., Paz Franklin Company, and Washington Greene Associates as vehicles to conduct and invest in various real estate ventures.  (Id. ¶¶ 37, 50, 56.)

Plaintiffs allege that Klein used funds from all of these jointly-owned entities to "further his own business ventures" to the exclusion of Gutman.  (See e.g., id. ¶¶ 27-36, 45, 51, 57-70, 101.)  They maintain that Klein engaged in numerous transactions, misrepresenting to Gutman that the entities they owned together were benefitting, when in fact, Gutman alleges, he was secretly diverting assets from these entities to fund separately-owned or controlled entities,

---

[1] Although defendants brought their contempt motion before me, United States Magistrate Judges generally lack civil contempt power in cases not on consent.  See 28 U.S.C. § 636.  I am therefore required to address the motion in the context of a Report and Recommendation to the assigned district judge.

-2-

including defendants Rodney Capital Company, Toyv Corporation, and Republic Capital Group, LLC, or to purchase or fund investments for himself and his family members or agents, including defendants Dina Klein and Rachel Brach. (Id. ¶¶ 101, 102.) Gutman asserts claims, both individually and derivatively, for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1984, *et seq*., breach of fiduciary duty, self-dealing, unjust enrichment, and usurpation of corporate opportunity, and plaintiffs seek an accounting, imposition of a constructive trust and/or substitution of parties, and a declaratory judgment determining plaintiffs' rights with respect to the assets, profits, and tax benefits of the derivative entities and the value of the defendants' assets derived from the transfers at issue. Defendants deny plaintiffs' allegations.

On September 18, 2003, the parties entered into the Confidentiality Stipulation, which provided, in pertinent part:

> 1. "Confidential Information" as used herein means the documents exchanged between the parties or obtained from non-parties pursuant to the terms of the Letter Agreement.[2]
>
> 2. The Confidential Information shall be used solely for the purposes of the proceedings currently pending between the parties and shall not be used for any business or other purposes whatsoever and shall under no circumstances be directly or indirectly disseminated.
>
> 3. The Confidential Information shall not be given, made available, discussed or otherwise communicated in any way to anyone other than: (a) the parties to the pending actions; (b) partners, associates and/or legal assistants of counsel of record in

---

[2] The Letter Agreement, also referred to as the Discovery Order, was executed simultaneously and sets out deadlines for the exchange of various categories of information, including bank records and tax returns. (See Declaration of Barry R. Feerst, Esq., dated Oct. 30, 2006, Ex. 1.)

> the pending actions and the secretarial and clerical employees of such counsel to whom it is necessary that this Confidential Information be shown for purposes of the litigations; (c) the Court, deposition notaries and/or court reporters; (d) witnesses during the course of their depositions or testimony or in preparation for their depositions or testimony; and (e) any expert witnesses retained by the parties for the purposes of the pending litigations.
>
> * * *
>
> 7. The provisions of this Stipulation and Order are applicable to all documents which may be hereafter produced by the parties *or with respect to documents that may be subpoenaed by either party*. If a person or entity is subpoenaed by either party and seeks a protective order against production, then the burden will be on the subpoenaed party to sustain the burden of confidentiality under this Stipulation and Order.

(Stipulation and Protective Order, annexed to the Declaration of Barry R. Feerst, Esq., dated Oct. 30, 2006 ("Feerst Decl."), as Ex. 2) (emphasis added). The parties also stipulated that this action would be stayed except for discovery, that no further pleadings would be filed, and that no further State Court actions would be filed by any party against any other party. (Id. at 2.)

In March 2006, Gutman commenced an action against several of Klein's relatives, and entities owned or controlled by them, in New York State Supreme Court, Kings County. (See Feerst Decl., Ex. 5.) In connection with that action, Gutman's counsel, Oved & Oved LLP, filed an affirmation in opposition to the defendants' motion to dismiss, which had raised a statute of limitations defense. The affirmation stated, in relevant part:

> Plaintiffs only learned of these fraudulent transactions in the last two years through discovery and investigation in connection with the RICO Action when Plaintiffs discovered that (1) monies were funneled from [defendant Washington Greene Associates] to Zalman Klein's entities to purchase and finance properties in Rockland County to the exclusion of Plaintiffs and (2) the monies from the supposed sale of [A to Z Capital Corp.]'s properties were transferred from [A to Z Capital Corp.] to Zalman Klein's entities

>             (including the Moving Defendants here) for little or no
>             consideration.

(Id., Ex. 7. ¶ 14.) According to defendants, this paragraph constitutes proof that Gutman's counsel used information obtained in this action in violation of the Confidentiality Stipulation. (Feerst Decl. ¶ 5; Defendants' Memorandum of Law, dated Oct. 31, 2006, at 2.)

Plaintiffs contend that they did not violate the Confidentiality Stipulation because that agreement does not cover materials subpoenaed from non-parties through independent investigation. (Plaintiffs' Memorandum of Law, dated Nov. 28, 2006 ("Pls.' Mem."), at 3.) They also argue that the Confidentiality Stipulation is unenforceable as a matter of law because it is overbroad and because the defendants "did not establish good cause" for entering into or maintaining that agreement. (Id. at 9.) Plaintiffs request that the parties be directed to "discuss and agree on a revised protective order that is legally sustainable pursuant to Rule 26(c)." (Id. at 12.) The parties' arguments will be addressed in turn.

**DISCUSSION**

A court's power to impose contempt orders is limited. A contempt order is warranted only if the "moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict." King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995) (citing Hart Schaffner & Marx v. Alexander's Dep't Stores, Inc., 341 F.2d 101, 102 (2d Cir. 1965)). The movant must establish that "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." King, 65 F.3d at 1058 (citing New York State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1351 (2d Cir. 1989)). A civil contempt order is a "potent weapon," Int'l Longshoremen's Ass'n v. Phila.

Marine Trade Ass'n, 389 U.S. 64, 76 (1967), and should not be used where "there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." Cal. Artificial Stone Paving Co. v. Molitor, 113 U.S. 609, 618 (1885).

With respect to the first prong of this test, a "clear and unambiguous order is one that leaves 'no uncertainty in the minds of those to whom it is addressed.'" King, 65 F.3d at 1058 (quoting Hess v. New Jersey Transit Rail Operations, Inc., 846 F.2d 114, 116 (2d Cir. 1988)). Thus, one "must be able to ascertain from the four corners of the order precisely what acts are forbidden." Id. (citing Drywall Tapers, Local 1974 v. Local 530, Operative Plasterers Int'l Ass'n, 889 F.2d 389, 395 (2d Cir. 1989)). Moreover, because this disciplinary weapon is "at the severe end of the spectrum," it may only be imposed where a party has violated an "operative command" of the court. Erhardt v. Prudential Group, Inc., 629 F.2d 843, 846 (2d Cir. 1980) ("Paramount interests of liberty and due process make it indispensable that the invocation of the contempt power . . . be grounded upon a direct infraction of a specific command of the court."). Even a violation of a so-ordered stipulation will not necessarily serve as the basis of a finding of contempt. See Torres v. Walker, 356 F.3d 238, 243 (2d Cir. 2004) (citing Hester Indus., Inc. v. Tyson Foods, 160 F.3d 911, 916 (2d Cir. 1998)).

Here, although the Confidentiality Stipulation states explicitly that it applies to "documents that may be subpoenaed by either party," Feerst Decl., Ex. 2, it is not a so-ordered agreement and therefore does not constitute a court command. Since defendants cannot demonstrate that plaintiffs violated a direct court order, they fail to satisfy this requirement. See, e.g., Smith v. Schermerhorn, No. 85 C 7372, 1994 WL 6862, at *1 (N.D. Ill. Jan. 10, 1994) (explaining that contempt is "not an available remedy for the violation of a stipulation.").

Because defendants have failed to demonstrate a violation of a clear and unambiguous court order, it is unnecessary to address the remaining prongs of the contempt test. As for plaintiffs' second argument – that the Confidentiality Stipulation is unenforceable as a matter of law and should be modified – the court takes issue with plaintiffs' assertion, four years after entering into the Confidentiality Stipulation, that they are not bound by it or should be released from its restrictions. Protective orders serve "the vital function . . . of 'secur[ing] the just, speedy, and inexpensive determination' of civil disputes . . . by encouraging full disclosure of all evidence that might conceivably be relevant. This objective represents the cornerstone of our administration of civil justice." Martindell v. Int'l Tel. & Tel. Corp., 594 F.2d 291, 295 (2d Cir. 1979). If confidentiality agreements were easily modified or deemed unenforceable after the exchange of discovery, parties would be less forthcoming in disclosing information and less willing to settle their disputes. See id. ("Unless a valid Rule 26(c) protective order is to be fully and fairly enforceable, witnesses relying upon such orders will be inhibited from giving essential testimony in civil litigation. . . . ").

It is, moreover, presumptively unfair for courts to order the revision of stipulations that assure confidentiality and upon which the parties have reasonably relied. See S.E.C. v. TheStreet.Com, 273 F.3d 222, 230 (2d Cir. 2001) ("We have been hesitant . . . to permit modifications of protective orders in part because such modifications unfairly disturb the legitimate expectations of litigants.").[3] Here, defendants reasonably have relied on the

---

[3] To the extent that the Agent Orange line of cases, cited by plaintiffs, established a presumption in favor of public access to all discovery materials, that presumption ceased to apply after the amendment to Fed. R. Civ. P. 5(d), which formerly required the public filing of discovery materials, but now prohibits the filing of certain discovery materials unless they are

(continued...)

continuation of the Confidentiality Stipulation, which plaintiffs entered into freely as a result of arms-length discussions. To be sure, the court may order the modification of a confidentiality agreement if it was improvidently entered into in the first place, or where the moving party demonstrates a compelling need or extraordinary circumstances, Martindell, 594 F.2d at 296, but other than their vague protestations that the Confidentiality Stipulation is "overbroad" and that defendants have not shown good cause for continuing it, plaintiffs have presented no reason for disturbing this agreement. Plaintiffs obviously believed that the Confidentiality Stipulation was in their best interests when they signed it, and they no doubt have benefitted from it in the interim. Indeed, plaintiffs did not seek to modify the Confidentiality Stipulation until *after* they were accused of violating it. I therefore reject plaintiffs' contention that the Confidentiality Stipulation is unenforceable.

Defendants also seek sanctions against plaintiffs and their counsel under Fed. R. Civ. P. 16(f), which states, in pertinent part:

> If a party or a party's attorney fails to obey a scheduling or pretrial order, . . . the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just. . . . In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

In addition, courts "have the inherent power to maintain the integrity of protective orders by

---

³(...continued)
used in the proceeding or the court orders filing. See TheStreet.Com, 273 F.3d at 233 n.11. Regardless, because the documents at issue in this case have been exchanged solely between the parties and no non-party seeks access to them, the concern for public disclosure is inapplicable.

imposing sanctions on those who violate them." Schiller v. City of New York, No. 04 Civ. 7921KMK/JCF, 2007 WL 1623108, at *3 (S.D.N.Y. June 5, 2007). Although the Confidentiality Stipulation at issue here was not so-ordered, this court expects parties and their counsel to uphold their commitments and takes violations of confidentiality agreements very seriously.

Notwithstanding plaintiffs' admission that they used some information obtained "through discovery and investigation in connection with" the instant case, it is unclear precisely what materials plaintiffs used or how they obtained them. I cannot impose sanctions without a more conclusive finding of culpability. Accordingly, defendants' request for a hearing on this issue is granted. No later than October 12, 2007, plaintiffs shall submit an affidavit clearly and precisely identifying the records or other evidence referred to in paragraph 14 of the Affirmation of Eric S. Crusius, Esq, dated October 3, 2006, and explain in detail the date and manner that the information was obtained. Defendants shall submit their response, if any, on or before October 26, 2007. The parties are directed to appear before me on November 15, 2007 at 2:00 p.m., in Courtroom 11B, 225 Cadman Plaza East, Brooklyn, New York.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that defendants' motion for contempt be denied. Objections to this report and recommendation must be filed within ten (10) business days, with courtesy copies to the undersigned, in order to preserve appellate review. See 28 U.S.C. § 636(b)(1).

On the issue of sanctions, the parties are ordered to appear before me for a hearing on November 15, 2007 at 2:00 p.m.

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
September 26, 2007