UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

ARYEH GUTMAN, et al.,

                      Plaintiffs,

     -against-

ZALMAN KLEIN, et al.,

                      Defendants.

------------------------------------------------------------ X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 24 2010 ★

BROOKLYN OFFICE

**MEMORANDUM**
**DECISION AND ORDER**

03 Civ.1570 (BMC) (RML)

**COGAN**, District Judge.

This case is before me on defendants' motion for discovery sanctions for alleged spoliation of a hard drive, and on plaintiffs' motion for damages, costs, and fees following a default judgment that was entered against defendants. I referred both motions to Judge Levy and he has since issued reports and recommendations. Plaintiffs and two sets of defendants have objected to Judge Levy's calculation of damages, and defendants have also objected to Judge Levy's report recommending that their motions for sanctions be denied. I reject the objections and adopt the reports and recommendations in full.

## BACKGROUND

Familiarity with the background of this seven-year litigation is assumed, and the facts, as they relate to the present motions, are therefore set forth only briefly below. This Court has previously found that defendant Zalman Klein ("Klein") spoliated potentially crucial evidence and sanctioned defendants by entering a default judgment. I referred the matter to Judge Levy to conduct a damages inquest. The Court has since awarded attorneys' fees and costs related only to the spoliation discovery dispute. The first report and recommendation before me addresses plaintiffs' claim for damages as well as attorneys' fees and costs related to the broader lawsuit.

1

The second report and recommendation deals with defendants' motion for sanctions based on their allegation that plaintiffs have refused to produce a relevant hard drive in discovery.

## DISCUSSION

### (1) Standard of Review

A district court judge may refer certain matters, including motions for damages and sanctions, to a magistrate judge for a report and recommendation. See 28 U.S.C. § 636(b)(1). If objections are timely filed, the district court must consider them *de novo*. Id.; see United States v. Padilla, 06-CR-824, 2007 WL 1958894, at *1 (E.D.N.Y. June 29, 2007). The *de novo* review requires the district court neither to "rehear the contested testimony" nor to "conduct a new hearing on contested issues." United States v. Raddatz, 447 U.S. 667, 674-75 (1980).[1]

The statute "permit[s] whatever reliance a district judge, in the exercise of sound judicial discretion, [chooses] to place on the magistrate's proposed findings and recommendations." Id. at 676. "Normally, the judge, on application, will consider the record which has been developed before the magistrate and make his own determination on the basis of that record, without being bound to adopt the findings and conclusions of the magistrate." Id. at 675; see also United States v. Taylor, 92 F.3d 1313, 1326-27 (2d Cir. 1996) (discussing Raddatz). In making its final determination, the district court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)). But the court is not required to review uncontested portions of the R&R. See United States v. Mackay, 07-CR-

---

[1] Although the substance of most of the objections before me are reiterations or summaries of the arguments rejected by Judge Levy in his report, which the Court could review for clear error, see e.g., Kalderon v. Finkelstein, No. 08 Civ. 9440, 2010 U.S. Dist. LEXIS 88036 (S.D.N.Y. Aug. 24, 2010) (reviewing objections based on repeated arguments for clear error and objections based on new arguments *de novo*), to avoid confusion, I review all the objections *de novo*.

488, 2008 WL 4146359, at *1 (E.D.N.Y. Sept. 8, 2008) (citing Thomas v. Arn, 474 U.S. 140, 150 (1985)).

*(2)    Judge Levy's Report and Recommendation on Damages and Fees*

### A. Background

Plaintiffs seek damages for each fraudulent real estate transaction engaged by defendants as identified in their complaint. To prove damages, plaintiffs submit a declaration of Aryeh Gutman – the individual plaintiff in this lawsuit – along with supporting exhibits, including copies of deeds and mortgages to various properties allegedly involved in defendants' fraud. Plaintiffs urged Judge Levy to decide the inquest without a hearing.

Judge Levy issued his report and recommendation without holding a hearing, citing his familiarity with this long-pending case and the fact that most of defendants' evidence had been established as false and misleading by some of the allegations in the complaint, which have been deemed admitted by virtue of the default. After performing a thorough analysis of the plaintiffs' application for damages as it pertains to each transaction, Judge Levy recommended an award of $3,334,500 to A to Z Capital Corp., $1,506,979.98 to A to Z Holding Corp., $1,357,500 to Washington Greene Associates, and an award of attorneys' fees and costs in the amount of $444,738.94. He also recommended the removal of defendant Klein as partner from Paz Franklin Company and Washington Greene Associates.

Both parties object to Judge Levy's calculations. Defendants argue that the recommended award is "refuted by credible evidence or [is] improper because [it] constitute[s] a double recovery." They also claim that Judge Levy should not have trebled the damages because the complaint does not sufficiently allege a Civil RICO claim. Defendant Dina Klein, Zalman Klein's wife, filed separate objections, repeating the sufficiency of the complaint argument, and

3

adding that the allegations in the amended complaint do not support a judgment against her, and that she did not cause any of the damages.

Plaintiffs launch broader objections. They argue that Judge Levy's report erred in not stripping Klein of his rights in the corporate entities; that he should have recommended awarding them prejudgment and postjudgment interests; and that he should have allowed them to make an application for attorneys' fees and costs after the inquest was fully submitted. Plaintiffs also argue that Judge Levy "did not apply the proper legal standard in assessing plaintiffs' burden in the damages submission," which they claim led to a miscalculation of damages with respect to at least seven transactions.

### B. Defendants' Objections

#### 1. Contradictory evidence and double recovery

Defendants' argument that Judge Levy did not properly weigh contradictory evidence and allowed double recovery is without merit. First, they claim that with respect to the 40 Franklin Street property – the proceeds from the sale of which Klein allegedly diverted – there was evidence that Gutman received the money. In making this argument, plaintiffs attempt to re-litigate the reliability of the financial documents that they submitted to Judge Levy to contradict Gutman's account. Judge Levy considered this evidence too "unreliable . . . , contradictory or jumbled to warrant much weight," in part because of the admitted allegations in the complaint. I agree. Defendants' claim of double recovery – that awarding damages for this and subsequent transactions would be paying plaintiffs twice – is also without merit. This argument rests on the unsubstantiated assertion that "all of the subsequent transactions by Capital and Holding were funded from the proceeds of the sale of 40 Franklin Avenue."

Second, after repeating the dubious double-recovery argument for transactions involving 99 Spencer Street, 105 Spencer Street, 108 Walworth Street, and 93-97 Spencer Street, defendants reassert another claim that Judge Levy dismissed: that the cost of maintenance and other expenses for some of these properties should be subtracted from the sales prices. I agree with Judge Levy that repayment of the total misappropriated sales prices is necessary to make Capital whole; after all, as defendants concede, it is Capital that paid these expenses, not defendants, and it is Capital that is recovering for the sale, not Gutman.

Third, for the alleged fraudulent satisfaction of a mortgage secured by 166 Clymer Street, defendants argue that the damages award should be offset by the personal money that Klein purportedly deposited. They cite to an account ledger previously submitted to the Court as evidence. But neither this document nor any other submitted by defendants support the claim that the deposit consisted of Klein's personal funds. Thus, this argument too fails.

Fourth, defendants dispute Judge Levy's calculation of damages for 5803, 5807, and 5811 13th Avenue transactions by the Washington Green Associates (WGA). They claim, without support, that these properties were sold at a loss, and that the proceeds were given to an investor, pursuant to the WGA partnership agreement. This argument is rejected because defendants offered no evidence that a payment to the investor was ever made.

Finally, for damages stemming from a loan secured by the Menachem Shamgalow Mortgage that Klein allegedly caused WGA to make, Judge Levy dismissed defendants' response that the loan was paid back to the partnership. As Judge Levy correctly noted, defendants' assertion that "WGA books clearly show" this repayment, their citation to the "WGA Check Register" notwithstanding, was not supported by any of their inquest submissions. Defendants claim that Judge Levy's observation was "predicated on an oversight" because an

exhibit to one of the declarations submitted almost two years earlier in the litigation includes a "Check Register" (without any apparent identification of WGA on the document or in the accompanying declaration), which shows the repayment.

Any failure to submit or reference supporting documentation in an inquest for damages is, of course, defendants' oversight, not Judge Levy's. See e.g., Garden City Boxing Club, Inc. v. Toribio, 05 Civ. 8669, 2008 U.S. Dist. LEXIS 58450 (S.D.N.Y. July 31, 2008) (holding that a magistrate judge need not sift through the record when a party fails to reference evidence in an inquest on damages). And it is a mistake that should not be curable at the objections stage, especially given the protracted nature of this case. Cf. Paterson-Leitch Co. v. Massachusetts Municipal Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("systemic efficiencies would be frustrated and magistrate's role reduced to that of a mere dress rehearser" if the party were allowed to save some of its arguments for the "second round"). Thus, this argument and the broader objection are rejected.

### 2. Sufficiency of the complaint

Inexplicably, defendants (including Dina Klein) again urge the court to exercise its discretion to consider whether the complaint sufficiently alleges a Civil RICO cause of action. Judge Levy disposed of this argument in a footnote, correctly observing that the sufficiency of the complaint is the law of the case (citing this Court's Order, dated December 9, 2009).

Over seven years ago, Judge Gleeson held in a hearing that the original complaint did not "fail[] to state a RICO claim upon which relief can be granted" and denied the motion to dismiss. He required plaintiffs to amend the complaint to comply with Fed. R. Civ. P. 9(b). Turning to defendants, Judge Gleeson stated that if they determine that the amended complaint "is not sufficiently pled, I will entertain another application *but it's only going to be on specificity*

6

*grounds*." (emphasis added). Defendants did not challenge the complaint until six years later, and did so only for lack of subject matter jurisdiction. In its Orders dated December 9, 2009 and December 22, 2009, the Court reminded defendants that arguments for dismissal for failure to state a RICO claim have been entertained and found wanting.[2]

Defendants nonetheless claim that "contrary to Magistrate Levy's assertion . . . [the amended complaint] never actually survived a motion to dismiss." For the third time, the Court reminds defendants that the action has withstood a Rule 12(b)(6) challenge – this is so regardless of whether the amended complaint or the less specific original complaint survived the motion. Judge Levy's statement was correct, and the objection is overruled.

### 3. Dina Klein's objections

In his report and recommendation, Judge Levy noted that Dina Klein has moved to set aside the default judgment against her, but that he would issue his report on damages now, with Dina Klein's motion proceeding on a parallel track, "[i]n the interest of avoiding further delays in this oft-delayed litigation." Dina Klein has nonetheless filed objections to this report. Apart from incorporating by reference objections made by other defendants, Dina Klein does not dispute the calculation of money damages or the appropriateness of the non-monetary relief in the inquest. Instead she makes two arguments – that plaintiffs have failed to state a claim against her and that she has no connection to the damages. These are arguments for vacatur, not valid objections to Judge Levy's recommendation on the inquest. Dina Klein's objections are therefore overruled.

---

[2] In its December 22 Order, the Court observed that "[a]s Judge Gleeson previously ruled . . . , plaintiffs have satisfied the Rule 12(b)(6) standard. Defendants are right that the entry of default in this case forecloses any further scrutiny as to whether plaintiffs' RICO claims survive Rule 12(b)(6). But they are wrong to infer from this that they may raise the same point under the guise of a challenge to subject matter jurisdiction."

7

### C. Plaintiffs' Objections

#### 1. Stripping Klein of his rights in the corporate entities

Plaintiffs argue that Judge Levy should not have stopped with removing Klein from the two partnerships, but should have also recommended stripping Klein of his rights in the two corporations (Capital and Holding), and declare Gutman the sole remaining owner of the corporate derivative entities. Judge Levy noted that plaintiffs failed to cite any authority to warrant this relief. They fail to do the same at the objections stage. Whatever the merits of equating partnerships with closely held corporations in this context, granting plaintiffs' request in the instant action would risk excessive monetary relief for Gutman. This objection is overruled.

#### 2. Prejudgment interest

Judge Levy explained that in the absence of "exceptional circumstances," where plaintiffs' damages are already trebled, courts have declined to award pre-judgment interest. The two exceptional circumstances that courts have found to justify the award, as Judge Levy observed are: (1) where the treble damages do not adequately compensate the plaintiffs or (2) where the defendants have unfairly delayed or obstructed the course of litigation. See Bingham v. Zolt, 810 F. Supp. 100, 102 (S.D.N.Y. 1993). Plaintiffs claim the latter. I agree with Judge Levy that "defendants' conduct is not so far outside the mainstream of civil RICO cases as to justify an award of prejudgment interest." Thus, the objection is overruled.[3]

---

[3] Curiously, plaintiffs claim that Judge Levy's finding "is erroneous because it does not reflect or apply the standard for awarding prejudgment interest." They then state that "[p]rejudgment interest on trebled RICO damages is appropriate where (1) a plaintiff is not adequately compensated or (2) the defendants acted unreasonably or unfairly to delay or obstruct the course of the litigation." (citation and quotation marks omitted). The Court has difficulty appreciating the distinction between the standard as Judge Levy explained it, and its restatement as submitted by plaintiffs.

### 3. Postjudgment interest

Judge Levy did not consider awarding postjudgment interest because despite praying for the relief in their complaint, plaintiffs did not appear to be seeking it in their submissions. Plaintiffs argue that Judge Levy's finding that the relief was waived was "erroneous" because they identified postjudgment interest in a "factual and procedural background" section of their brief and because they were merely waiting until after the entry of judgment to seek this relief.

In the combined 91 pages of briefing submitted to Judge Levy, plaintiffs mention postjudgment interest once, in their background section of the opening brief, where they summarize the complaint. "Postjudgment interest" does not appear in their argument section (although prejudgment interest does); defendants do not respond to it in their opposition brief; and plaintiffs do not raise it in their reply (although they devote a section to prejudgment interest). The only reasonable conclusion that Judge Levy could have drawn from this is the one he reached – that plaintiffs withdrew their request. Filing objections to a report and recommendation is not the tool for mopping up any inadvertent omissions. See e.g., Sci. Components Corp. v. Sirenza Microdevices, Inc., No. 03-CV-1851, 2006 U.S. Dist. LEXIS 61872, at *6-7 (E.D.N.Y. 2006) ("In this district and circuit, it is established law that a district judge will not consider new arguments raised in objections that could have been raised before the magistrate but were not.") (collecting cases).

Plaintiffs' second argument against Judge Levy's finding of inadequate pursuit of postjudgment interest – that they thought it was appropriate to wait until entry of judgment to seek this relief – is equally untenable. Putting aside the fact that plaintiffs routinely request postjudgment interest in their inquest submissions, see e.g., Garden City Boxing Club, Inc. v. Rojas, 05-cv-1047, 2006 U.S. Dist. LEXIS 95617, at *25 (E.D.N.Y. Oct. 12, 2006), the

9

argument strikes me as specious given that plaintiffs sought this relief in their complaint. This objection is therefore rejected.

### 4. Application for attorneys' fees

Plaintiffs do not dispute Judge Levy's calculation of attorneys' fees. Instead they claim that "Judge Levy erred by not providing plaintiffs with an opportunity to make an application for their attorneys' fees and costs incurred after the inquest was fully submitted." It is not clear how Judge Levy precluded plaintiffs from supplementing their submissions; the report and recommendation to which plaintiffs are objecting certainly includes no such prohibition. Thus, as an objection to the report, plaintiffs' argument fails.

Nonetheless, 18 U.S.C. § 1964(c) does entitle prevailing plaintiffs to recover "the cost of the *suit*, including a reasonable attorney's fee." (emphasis added). Plaintiffs may file their application for additional costs and fees after filing responses to any objections to the forthcoming report and recommendation on Dina Klein's motion to set aside the default or, if no objections are filed, after the time to object to the report expires.

### 5. Legal standard in assessing plaintiffs' burden

Plaintiffs' broadest objection is to the legal standard that Judge Levy applied in assessing their submission in the inquest. In short, they claim that because defendants were found to have spoliated crucial evidence, the Court must afford plaintiffs "the benefit of all inferences that reasonably flow from the allegations of the Amended Complaint" and not fault them for "any gaps in evidence that would substantiate the damages" they seek.

Judge Levy addressed this argument when he made a global observation about plaintiffs' submissions in his report and recommendation:

> In numerous instances, plaintiffs have supported their claims solely with sworn statements by Gutman. Plaintiffs repeatedly cite Klein's spoliation in support of

> their argument that Klein is to blame for these gaps in evidence .... Plaintiffs
> read too much into the R & R, which found that Klein spoliated information on at
> least one laptop computer, but by no means found that he destroyed *all* records
> from the parties' decades-long business relationship.

(internal citations omitted). I agree with this observation and the legal standard employed in the report.

It is well-settled in this Circuit that even after a default judgment is entered against defendants, "the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with *reasonable certainty*." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151 (2d Cir. 1999) (internal citations omitted, emphasis added). The burden of proof rests with the plaintiffs. See Greyhound Exhibitgroup v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Plaintiffs simply misstate the law when they claim that they are entitled to all favorable inferences that reasonably flow from the *complaint* because the default stemmed from spoliation of some of the evidence. They rely on authority that is either inapplicable or contrary to this assertion. For instance, plaintiffs cite, Cablevision Sys. New York City Corp. v. Lokshin, 980 F. Supp. 107 (E.D.N.Y. 1997), where the Court makes clear that the reasonable inferences must flow from the *evidence*. Perhaps if the default were predicated on spoliation of *all* relevant evidence, plaintiffs would have a stronger argument; but as Judge Levy observed, this is not the case here.

Nor did Judge Levy err in applying the standard. Plaintiffs list seven transactions recommended recovery for which they claim is inadequate: 166 Clymer Street Corp. Mortgage, 53rd New Utrecht Associates Mortgage, Hyman Perlmutter Mortgage, 111-113 Spencer Street, 389 Washington Avenue, Weiner Subdivision, and Sperber Mortgage. Plaintiffs' objection to the recommended damages for each of these transactions is premised on the invented standard

for proving damages, which involves filling evidentiary gaps with favorable inferences even where it is not apparent that the gaps were created by defendants' spoliation. They also offer alternative arguments for disputing Judge Levy's calculations for these transactions, and all but one suffer the same defect as the plaintiffs' broader objection: making assertions that are not grounded in evidence – at least evidence that would directly support the assertions – and inviting the Court to instead make inferences from the complaint.

Plaintiffs' objection as it relates to the 111-113 Spencer Street transaction fails for a different reason. Judge Levy found that plaintiffs made an allegation of theft in their inquest submissions that is absent in their complaint. He declined to award damages because plaintiffs failed to establish liability for this transaction. Plaintiffs object, claiming that "the purpose of litigation is to flesh out the parties' claims" and that the absence of the allegation in the complaint should be excused to avoid reading the complaint "narrowly and in a vacuum rather than in context of the remainder of the allegations . . . ." Plaintiffs offer no authority for the sweeping proposition that would allow them to establish liability for this allegation on an inquest; and considering that Judge Gleeson ordered the complaint to be amended to plead facts with more specificity, I find this argument unavailing.[4]

The recommended damages for these transactions correctly reflect the evidence submitted. Defendants' spoliation cannot be used to short circuit the process for establishing damages; inferences must flow from the evidence, not the complaint. This objection is therefore rejected, and the report and recommendation is adopted in full.

---

[4] The objection to Judge Levy's recommendation to not award any damages for the alleged Sperber Mortgage, while sharing the general shortcoming of not substantiating assertions with evidence – here, a failure to show a net loss to WGA – is also rejected because the complaint did not specify this loan, and thus did not establish liability.

### (3) *Report and Recommendation on Defendants' Motion for Sanctions*

#### A. Background

Defendants filed a motion for sanctions or alternative relief. They allege that plaintiffs have committed their own spoliation by substituting a non-work-related hard drive belonging to a third party in place of a hard drive from an office computer, which defendants claim plaintiffs were supposed to produce in discovery.

Judge Levy recounts the long path that this motion took to get to the Court. Briefly, Judge Levy issued a discovery order in 2005 that directed the parties to provide copies of their hard drives. A month later, defendants imaged two hard drives from the two office computers identified by Gutman. By letter dated December 23, 2005, defendants' attorney notified the Court that they intended to present evidence showing that Gutman did not disclose all of his computers. Over a year later, defendants' attorney again questioned Gutman's testimony that he only had two office computers. But defense counsel did not raise the issue at a conference the Court held to address various discovery disputes. The Court continued holding hearings on discovery, and, in June of 2008, even encouraged defendants, if they were so inclined, to file a motion to have an expert inspect Gutman's hard drives. The motion never came. Defendants filed the instant motion for sanctions on March 19, 2010.

Judge Levy's report recommends denying the motion because it is untimely and meritless. The motion is untimely, the report states, because "[t]o delay filing this motion until more than four years after the events in question, and nearly two years after the court last invited a motion, is to wait too long." It should also be denied as meritless, Judge Levy recommends, because it is based on flawed logic. Specifically, Judge Levy notes that the 2005 Order mandated the production of *all* computers, not just business-related ones; that Gutman testified to

having two computers in his office, not necessarily to having two exclusively business-related stations; and that a hard drive dominated by none-work-related files, therefore, does not prove spoliation. Defendants, including Dina Klein, filed objections to the report.

## B. Defendants' objections[5]

First, defendants object to Judge Levy's recommendation to deny the motion on the merits. Ignoring Judge Levy's analysis, defendants assume that they have established that Gutman replaced a work-related hard drive with one owned by a third party and did so two weeks before the hard drive was to be imaged. They then list a series of "critical questions" about the prior hard drive, which Judge Levy purportedly failed to address. Defendants' assumption, however, is unwarranted because, as the report and recommendation's clear analysis shows, it is substantiated by neither direct nor inferential evidence that would show spoliation.

The report finds a minor contradiction in Gutman's statements that there were *never* three computers in his office and that his son would sometimes bring other computers. Defendants claim that the contradiction is significant because Gutman has, according to them, a history of lying. Judge Levy observed that the "discrepancy is too minor to warrant the relief defendants seek." I agree. Even if defendants succeeded in this round of character attacks to magnify the contradiction, they still fail to explain the other flaws in their argument that the report exposed – *i.e.*, why Gutman was obligated to produce only work-related hard drives or how the scope of the discovery orders included production of third-party computers. Finally, because defendants have not established that Gutman replaced his hard drive, their requests for an additional affidavit and forensic examination are also denied.

---

[5] Dina Klein's objections to this report merely incorporate by reference and restate the objections made by the rest of the defendants.

14

Second, defendants claim that the motion was timely because the court has discretion to impose sanctions at any stage of the action and because refusing to entertain the motion, after entering default judgment against defendants for their own spoliation, would be unfair. I reject both arguments.

Although defendants are correct that the Court has discretion to enter sanctions pursuant to Fed. R. Civ. P. 37 at any stage of the litigation, see Heinrichs v. Marshall & Stevens, Inc., 921 F.2d 418, 420 (2d Cir. 1990), the Court also has the discretion to deny Rule 37 motions as untimely. See Mercy v. County of Suffolk, 748 F.2d 52, 56 (2d Cir. 1984) ("a motion for Rule 37 sanctions should be promptly made thereby allowing the judge to rule on the matter when it is still fresh in his mind."). Defendants' explanation for their delay – one that Judge Levy dismissed – is unpersuasive. They claim that it was only in December of 2009 that they became aware of Gutman's conduct and only because of a "fortuitous" link between a deleted file from Gutman's hard drive and Klein's family member who directed him to individuals with relevant information. As Judge Levy explains, however, whatever the added value of this link may be, it does not justify the delay in filing a motion based on "concerns about the completeness of Gutman's production and the integrity of his hard drives" that date years back. See also Brandt v. Vulcan, Inc., 30 F.3d 752, 756 (7th Cir. 1994) (holding that a motion for Rule 37 sanctions was untimely because "additional evidence of discovery deceptions uncovered . . . [later] did not alter the fact that [plaintiff] could, and should, have taken action years earlier.").

As for the fairness argument, the Court is unmoved by the tit-for-tat claims that have plagued much of this litigation, just as it is unmoved by the recitation of irrelevant facts in the plaintiffs' response that they may think qualifies as background or context. The Court is not impressed by the meritless objections and the extensive responses, but it does not ignore them;

when it is time to review plaintiffs' supplemental application for fees and costs, the Court may revisit these submissions when it considers the reasonableness of the hours expended.

The objections are therefore overruled, and the report and recommendation is adopted in full.

## CONCLUSION

For the reasons stated above, the [419] and [420] Reports and Recommendations are adopted in full. Defendants' [385] Motion for Sanctions is denied. Plaintiff's [320] Motion for Damages is granted in part and denied in part. Plaintiffs are awarded the following amounts: $3,334,500.00 to A and Z Capital Corp., $1,506,979.98 to A to Z Holding Corp., and $1,357,500.00 to Washington Greene Associates. The Court orders Zalman Klein's removal as a partner from Paz Franklin Company and Washington Greene Associates. Defendants are ordered to pay attorneys' fees and costs in the amount of $444,738.94 in addition to the fees and costs that it may order after reviewing plaintiffs' supplemental submission.

**SO ORDERED.**

/s/(BMC)
U.S.D.J.

Dated: Brooklyn, New York
November 19, 2010