UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
ARYEH GUTMAN, individually and on behalf                     :
of A TO Z HOLDING CORP., A TO Z                              :
CAPITAL CORP., PAZ FRANKLIN                                  :
COMPANY and WASHINGTON GREENE                                :
ASSOCIATES,                                                  :   **MEMORANDUM**
                                                             :   **DECISION AND ORDER**
                         Plaintiffs,                         :
                                                             :   03 Civ. 1570 (BMC)
            - against -                                      :
                                                             :
ZALMAN KLEIN, DINA KLEIN, RODNEY                             :
CAPITAL COMPANY, TOYV                                        :
CORPORATION, ATLAS FURNITURE                                 :
MANUFACTURING CORP., A TO Z                                  :
HOLDING CORP., A TO Z CAPITAL CORP.,                         :
PAZ FRANKLIN COMPANY and                                     :
WASHINGTON GREENE ASSOCIATES,                                :
                                                             :
                         Defendants.                         :
------------------------------------------------------------ X

**COGAN,** District Judge.

This is an epic case of "business divorce" that has gone on for more than a dozen years and shows no sign of abating, despite the fact that final judgment was entered in favor of some of the plaintiffs more than five years ago. See Gutman v. Klein, No. 03 Civ. 1570, 2008 WL 4682208 (E.D.N.Y. Oct. 15, 2008) (recommending entry of default judgment), Report and Recommendation adopted, 2008 WL. 5084182 (E.D.N.Y. Dec. 2, 2008); 2010 WL 4975593 (E.D.N.Y. Aug. 19, 2010) (recommending amount of damages), Report and Recommendation adopted, 2010 WL 4916722 (E.D.N.Y. Nov. 24, 2010), aff'd, 515 F. App'x 8 (2d Cir. Mar. 20, 2013). It is presently before me on the motion of a non-party, Goldwasser Management, Inc. ("GMI"), to intervene under Federal Rule of Civil Procedure 24. I do not have subject matter jurisdiction to consider this motion, and if I did, I would deny it as a matter of discretion.

**BACKGROUND**

Like any overlong conflict, the origins of this lawsuit have become largely immaterial over time. It suffices to note that the dispute arose between two former business partners, Gutman and Klein, in which the former brought RICO and derivative state law claims against the latter for using their jointly held enterprises to funnel money to Klein's wholly owned enterprises. Klein, in turn, made the same allegations against Gutman and his entities.

For present purposes, the relevant portion of the judgment entered February 16, 2011 awarded $1,357,500 to plaintiff Washington Greene Associates, a partnership of which Gutman and Klein had both been members. That judgment also removed Klein as a partner of Washington Greene. The judgment was entered after Magistrate Judge Levy found, and I adopted his Report and Recommendation, that Klein had deliberately spoliated crucial evidence in the case, and thus the Klein entities' answers were stricken.

Since entry of judgment, there have been sporadic flare ups between the parties as the Gutman entities have attempted, apparently without much success, to collect the judgment. In addition, there appears to be a continuation of the struggle in the New York state courts, this time with Klein as plaintiff and Gutman as defendant. I presently have two pending motions in which each side seeks, among other relief, to enjoin the other from proceeding in state court on *res judicata* grounds. (One might think those would cancel out, but strangely, they do not). In his motion, Gutman also seeks turnover of certain shares of stock in a company called 185 Marcy Corp., which is controlled by Klein, and which Gutman contends was used as a vessel to receive assets fraudulently moved from their previously joint entities. I will therefore refer to this motion as the "Turnover Proceeding." But the turnover and injunction motions are not the subject of this decision.

Rather, presently before me is a motion of a non-party, GMI, not previously known to me, or if I knew of it I have forgotten it in the sands of time, through its controlling person, Nat Greenfield. GMI seeks to intervene in this action even though the action is post-judgment. It has submitted a proposed complaint, although it does not identify itself as either an intervenor-plaintiff or intervenor-defendant, probably because, as will be seen, it is not readily apparent on which side it belongs.

According to GMI's motion, its predecessor, Greenfield, was a partner in the judgment creditor Washington Greene Associates, along with Klein and one Herman Frederick. Greenfield and Klein bought out Frederick. This Court's judgment removed Klein as a partner, which, according to Klein, left only Greenfield as partner. Two years later, Greenfield assigned his interest to GMI, which – again, according to the motion – left GMI as Washington Greene's only partner.

There is no explanation of how Gutman got involved, or even purported to get involved with Washington Greene, even though he maintained a derivative action here on its behalf for more than ten years. Instead, GMI contends that "Gutman did not apprise GMI of the Turnover Proceeding that is purportedly being brought on behalf of W[ashington Greene], nor did he seek GMI's authority for such a proceeding." GMI contends that execution on Klein's shares in 185 Marcy Corp. at the present time would prejudice it.

The argument to support this claim of prejudice (and its interest in these proceedings), consistent with most arguments in this case, is convoluted. GMI appears to contend that the real reason that Gutman is causing Washington Greene to execute on Klein's 185 Marcy Corp. shares is because 185 Marcy Corp., still controlled by Klein, currently has an action pending against Gutman in state court. That action alleges that Gutman caused 185 Marcy Corp. to transfer its

real property to another entity called 185 Marcy LLC, which apparently Gutman controls. If Gutman is successful in executing on Klein's shares in 185 Marcy Corp., GMI contends, then Gutman will have obtained complete control of 185 Marcy Corp., and will thereby squelch its ability to recover this real property from 185 Marcy LLC.

And why does that matter to GMI? Its theory is that if Washington Greene, through Gutman, executes on the 185 Marcy Corp. shares *now*, Washington Greene will receive less value, and maybe even no value, as compared to what it would receive if Washington Greene waited until 185 Marcy Corp. recovers its real estate from 185 Marcy LLC. In other words, whatever the source of Gutman's authority, which GMI has not told me and which its description of Washington Greene's lineage seems to belie, GMI does not mind Gutman using it, as he has been for nearly thirteen years. Rather, GMI only wants to temporarily limit Gutman's authority to seek turnover of the shares until the claims of 185 Marcy Corp. against 185 Marcy LLC and Gutman are resolved in the state courts.

## DISCUSSION

For three closely related reasons, GMI's motion to intervene is denied.

First and most fundamentally, I have no subject matter jurisdiction that would encompass GMI's claims. Its proposed intervenor complaint recites that I have "supplemental jurisdiction," but the question that this immediately raises is, "supplemental to what?" When the underlying lawsuit was originally started, I had federal question jurisdiction because of plaintiffs' RICO claims. However, once judgment was entered, that jurisdiction merged in the judgment. Any proceedings after the judgment are themselves based on supplemental jurisdiction. And because GMI's claims are supplemental to Gutman's effort to enforce the judgment, what GMI is asking

me to do is assert jurisdiction that is supplemental to jurisdiction that is itself supplemental. The Constitution does not reach that far.

Many cases make the point that jurisdiction to enforce judgments is itself ancillary (one of the terms, along with "pendent jurisdiction" and "pendent party jurisdiction" that became part of the codification into "supplemental jurisdiction" under 28 U.S.C. § 1367 in 1990), not original. As one Court recently noted:

> As a general rule, once a federal court has entered judgment, it has ancillary jurisdiction over subsequent proceedings necessary to vindicate its authority, and effectuate its decrees. This includes proceedings to enforce the judgment. Without ancillary jurisdiction to enforce judgments, the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution. As a result of its entry of judgment for the plaintiff, the district court possessed ancillary jurisdiction to enforce the judgment through supplementary proceedings.

VFS Fin., Inc. v. Elias-Savion-Fox LLC, 73 F. Supp. 3d 329, 335 (S.D.N.Y. 2014) (internal quotations and citations omitted).

The Supreme Court's decision in Peacock v. Thomas, 516 U.S. 349, 116 S. Ct. 862 (1996), illustrates that a federal court's supplemental jurisdiction only extends so far in the post-judgment context. There, the plaintiff-employee recovered a judgment under ERISA against his employer. He commenced a separate action in federal court against the controlling shareholder of his employer to pierce the corporate veil, purportedly based on supplemental jurisdiction. The Supreme Court did not allow this bootstrapping of supplemental jurisdiction upon supplemental jurisdiction:

> The claims in these cases have little or no factual or logical interdependence, and, under these circumstances, no greater efficiencies would be created by the exercise of federal jurisdiction over them.
>
> …

> In determining the reach of the federal courts' ancillary jurisdiction, we have cautioned against the exercise of jurisdiction over proceedings that are entirely new and original . . . or where the relief [sought is] of a different kind or on a different principle than that of the prior decree. . . . These principles suggest that ancillary jurisdiction could not properly be exercised in this case. This action is founded not only upon different facts than the ERISA suit, but also upon entirely new theories of liability.

Id. at 356, 358, 116 S. Ct. at 867, 869 (internal quotations and citations omitted).

Well prior to Peackock, the Second Circuit had reached a similar conclusion on different facts in Manway Construction Company, Inc. v. Housing Authority of the City of Hartford, 711 F.2d 501 (2d Cir. 1983). In Manway, two contractors on a city housing project sued the public housing authority for its breach. The housing authority asserted counterclaims for inadequate performance. The plaintiffs had posted a performance bond, and when judgment was entered for the housing authority on its counterclaims, the bonding company was prepared to pay the principal amount of the bond. That was not good enough for the housing authority, however, which additionally sought a substantial amount of interest that it argued would have accrued had the bonding company reasonably invested the bond during the long period in which the litigation had been pending. The Second Circuit, reversing the district court, held that there was no ancillary jurisdiction to determinate the dispute between the housing authority and the bonding company:

> [T]he Authority's claims against the Bank presented a congeries of issues completely unrelated to the breach of contract issues that were the subject matter of the original action and which were before the court on grounds of diversity.
>
> …
>
> Where a party asserts what really are two sets of distinct claims, there must be grounds for federal jurisdiction with respect to each.
>
> …

> In order for the district court to have considered the Authority's claims on the basis of ancillary jurisdiction, there must have been at least a common nexus of fact – a transactional relationship – between the claims predicated on federal jurisdiction and the claims to be piggy-backed into the federal court. . . . Even at the farthest reaches of ancillary jurisdiction, we have not allowed district courts to consider claims so distinct as here from the underlying basis for federal jurisdiction.

Id. at 504-05.

The issues raised by GMI's motion are entirely separate from any of the RICO claims that were the subject of this Court's judgment. GMI wants to litigate corporate ownership and control over one of the judgment creditors, Washington Greene, in a way that has nothing to do with Klein's liability for RICO violations. It is effectively alleging that Gutman, one of Washington Greene's partners (or managers, or someone with another agency role that GMI has not told me), is breaching his fiduciary duty to Washington Greene and/or GMI by timing his execution of the judgment to protect himself at the expense of the Washington Greene and/or GMI.

I have no familiarity with the background facts and issues raised in GMI's motion because, given Gutman's previously undisputed ownership interest in Washington Greene, none of these issues has been raised before. What GMI is asking me to do is entertain a whole new lawsuit between it and Gutman to adjudicate their rights *inter se*. That is not "supplemental" or "ancillary" to my federal jurisdiction to adjudicate the RICO claims. At most, it is "supplemental" or "ancillary" to my supplemental jurisdiction to enforce the judgment. Yet the Second Circuit's use of the term "piggy-backed" in Manway means that jurisdiction cannot be stacked upon jurisdiction that is already ancillary. Supplemental jurisdiction extends only one level.

The form of GMI's motion says a lot about its disconnectedness to this action. Typically, a party seeking intervention will submit a proposed pleading that shows itself on the same side of

7

the caption as the party or parties to which it is not adverse, i.e., as either "plaintiff-intervenor" or as "defendant-intervenor."  See e.g. Lehman Bros. Holdings, Inc. v. United States, No. 10 Civ. 6200, 2015 WL 2359256 (S.D.N.Y. May 8, 2015) (caption lists "Lehman Brothers Holdings, Inc., Plaintiff, and Official Committee of Unsecured Creditors of Lehman Brothers Holdings, Inc., et al., Plaintiff-Intervenor, v. United States of America, Defendant); Continental Cas. Co. v. Marshall Granger & Co., LLP, 6 F. Supp. 3d 380 (S.D.N.Y. March 20, 2014) (caption lists "Continental Casualty Company, Plaintiff, v. Marshall Granger & Company, LLP, and Laurence Brown, Defendants, and Joseph J. Broughton, Jr. and Northstar Investment Group, Ltd., Defendants-Intervenors").  In the instant case, neither GMI's motion nor, more significantly, its proposed complaint give any clue as to which side of the caption it wishes to be on.  I suppose the fact it refers to its proposed pleading as a "complaint" indicates a desire to be aligned as a plaintiff-intervenor against Klein.  But the substance of its pleading makes it clear that it is seeking relief against Gutman, not Klein, so perhaps, whatever its proposed pleading should be (answer in intervention?; counterclaim in intervention?; opposition to motion?), it should not be a complaint.  This is not merely a technical observation (although it is that); it also reflects the fact that GMI's new claims just do not fit comfortably anywhere in this case.

     The Second Circuit's decision in Manway is also notable in that it did not reverse the district court for abuse of discretion in exercising ancillary jurisdiction, even though it had been established since before United Mineworkers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139 (1966), that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right," which "need not be exercised in every case in which it is found to exist."  Rather, it reversed for lack of subject matter jurisdiction.  This suggests that whatever the line is between the non-existence of supplemental jurisdiction and the abuse of discretion for invoking it in the pre-judgment context,

the grant of supplemental jurisdiction post-judgment may be narrower. That would be consistent with the more limited focus of ancillary federal jurisdiction in the post-judgment context, which is simply to see that the judgments of the court are effectuated, not that all related claims between the parties are finally determined in one proceeding.

This, in turn, leads me to an alternative ground for denying GMI's motion. Even if I had supplemental jurisdiction, I would decline to exercise it as a matter of discretion. Section 1367 of Title 28 essentially codifies the <u>Gibbs</u> standard of discretion. It requires the Court to find that the new claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). As noted above, I think it is plain that GMI's claim does not fall within that designation, but even if it did, the statute then requires me to consider several factors to determine whether to exercise my discretion, including whether there are "exceptional circumstances" that warrant denying jurisdiction. Here, the fact that we are in post-judgment proceedings suggests the need to reduce the scope of these proceedings, not expand them by introducing wholly new cases and controversies.

Moreover, Section 1367(c) provides that a district court may decline to exercise supplemental jurisdiction under certain circumstances. Notably, GMI does not even discuss these factors in its memorandum of law in arguing that I should exercise my discretion to exercise supplemental jurisdiction over its claims, even if there were jurisdiction. This is likely because those factors are not easily applied in the post-judgment context, and I am aware of no cases doing so. This difficulty provides an additional reason against exercising jurisdiction here. To illustrate, Section 1367(c)(3) allows a court to decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." As explained above, once

judgment in this case was entered, original jurisdiction merged with the judgment. The only remaining jurisdiction I have is supplemental jurisdiction to enforce the judgment. Therefore, without original jurisdiction, it does not make sense to entertain GMI's proposed complaint, which, by definition, would now also "predominate[] over the claim or claims over which [I] ha[d] original jurisdiction." 28 U.S.C. 1367(c)(2).

There is yet a third reason why I am compelled to deny GMI's motion. Even if I had supplemental jurisdiction to hear GMI's new claims, and even if I exercised discretion to retain that jurisdiction, the motion fails under Federal Rule of Civil Procedure 24. Although GMI maintains that it should be allowed to intervene as of right under Rule 24(a), it recognizes that any such right must be "timely" exercised. The determination of timeliness is itself a matter of discretion, see United States v. Yonkers Bd. of Educ., 801 F.2d 593, 594-95 (2d Cir. 1986), and should the district court reasonably determine that a motion to intervene is untimely, it may deny it on that basis alone. See "R" Best Produce, Inc. v. Shulman–Rabin Mktg. Corp., 467 F.3d 238, 241 (2d Cir. 2006). GMI's attempt at intervention is anything but timely.

GMI attempts to meet the timeliness requirement by alleging that within days of Washington Greene's motion for a turnover of Klein's 185 Marcy Corp. shares, it sought to intervene to challenge Gutman's authority to so direct the affairs of Washington Greene. That of course begs the question, which is, what were GMI, and its predecessor in interest, Greenfield, doing for a dozen years while Gutman, acting on behalf of Washington Greene, litigated this case, obtained a judgment, and proceeded, not just by the turnover motion but by other, earlier enforcement efforts, to realize upon that judgment? Under GMI's argument, it was free to sit on the sidelines as long as it felt that Gutman, who it now contends was effectively a stranger-in-

interest, was doing what it wanted him to do, but at any time, it could swoop in and object if Gutman acted contrary to GMI's view of its best interests.

The Second Circuit recently rejected this "stay silent until things start going badly" strategy in Floyd v. City of New York, 770 F.3d 1051(2d Cir. 2014), the case challenging the "stop and frisk" policy of the New York Police Department. The Court held that police unions could not sit by in the hope that the municipal administration would protect their interest, and then intervene on the eve of judgment when the administration changed its position. This case is more egregious, as we are not on the eve of judgment, but almost five years past it. If GMI had a problem with Gutman running Washington Greene for thirteen years, it should have addressed that problem long before now. See S.E.C. v. Reed, 97 F.R.D. 746, 748 (S.D.N.Y. 1983) (recognizing that although post-judgment intervention is not "absolutely barred," it is "unusual and not often granted") (internal quotations omitted).

Finally, to the extent GMI claims prejudice, it has many other avenues to seek relief against Gutman if it has not already waived them. It claims to have an arbitration agreement against Gutman, so it is free to arbitrate and obtain an injunction pending arbitration if it is entitled to that (indeed, compelling arbitration is the alternative request in GMI's proposed declaratory judgment complaint). It can also pursue relief against Gutman in a court of appropriate jurisdiction, and, again, obtain injunctive relief there if appropriate.

Whatever procedure might remain open to GMI, its jurisdictionally defective and untimely effort here is not it. GMI's claims are simply not related to this case.

## CONCLUSION

GMI's motion [525] to intervene is denied.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
August 24, 2015