UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                                                     :

ARYEH GUTMAN, individually and on behalf of  :
A TO Z HOLDING CORP., A TO Z CAPITAL        :
CORP., PAZ FRANKLIN COMPANY and           :
WASHINGTON GREENE ASSOCIATES,           :
                                                                    :   **MEMORANDUM**
                                 Plaintiffs,        :   **DECISION AND ORDER**
                                                                    :
                    - against –                     :   03 Civ. 1570 (BMC)
                                                                    :
ZALMAN KLEIN, DINA KLEIN, RODNEY         :
CAPITAL COMPANY, TOYV CORPORATION, :
ATLAS FURNITURE MANUFACTURING          :
CORP., A TO Z HOLDING CORP., A TO Z         :
CAPITAL CORP., PAZ FRANKLIN COMPANY :
and WASHINGTON GREENE ASSOCIATES,   :
                                                                    :
                                 Defendants.       :
---------------------------------------------------------------- X

**COGAN,** District Judge.

This case involves an ongoing legal action between two ex-business partners, culminating in plaintiffs' attempts to collect damages pursuant to a money judgment entered in 2010. Before me is plaintiff's motion to hold defendant Zalman Klein in civil contempt of my Order dated September 3, 2015 ("Turnover Order"), which directed him to deliver certain shares of stock for an execution sale.

## BACKGROUND

The current motion can be traced back to a dispute wherein two ex-business partners, Aryeh Gutman ("Gutman") and Zalman Klein ("Klein"), brought RICO and related state law claims against each other for using their jointly held enterprises to funnel money into wholly owned subsidiaries. Final judgment was entered in favor of some of the plaintiffs in this action, after I adopted Magistrate Judge Levy's Report and Recommendation finding that defendant

Klein had deliberately spoiled crucial evidence in the case and therefore struck Klein's entities' answers. See Gutman v. Klein, No. 03 Civ. 1570, 2008 WL 4682208 (E.D.N.Y. Oct. 15, 2008) (recommending entry of default judgment), Report and Recommendation adopted, 2008 WL 5084182 (E.D.N.Y. Dec. 2, 2008); 2010 WL 4975593 (E.D.N.Y. Aug. 19, 2010) (recommending amount of damages), Report and Recommendation adopted, 2010 WL 4916722 (E.D.N.Y. Nov. 24, 2010), aff'd, 515 F. App'x 8 (2d Cir. Mar. 20, 2013). As part of this judgment, plaintiffs were awarded the following amounts: $3,334,500.00 to A and Z Capital Corp., $1,506,979.98 to A to Z Holding Corp., and $1,357,500.00 to Washington Greene Associates ("Washington Greene"). Gutman v. Klein, No. 03 Civ. 1570(BMC), 2010 WL 4916722, at *9. I also ordered Klein's removal as a partner from Paz Franklin Company and Washington Greene, an entity he had formerly co-owned with Gutman. Id.

In July 2015, Washington Greene moved for a turnover order. All plaintiffs moved for an injunction to prevent defendants from relitigating certain issues in state court proceedings, and defendants also moved for the converse of that injunctive relief. The Turnover Order granted Washington Greene's motion for a turnover order, and denied all parties' motions for injunctive relief.

The Turnover Order stated in relevant part:

Klein is directed to deliver any shares issued to him in 185 Marcy Corp. to the United States Marshal within 7 days for the purpose of conducting an execution sale. If Klein does not physically have them, he is directed [to] cause 185 Marcy Corp. to issue shares in his name amounting to 50% of its outstanding shares pursuant to N.Y. Bus. Corp. Law § 508(e).

Following the Turnover Order, counsel for Klein and counsel for 185 Marcy Corp. exchanged communications via email regarding the issuance of shares in Klein's name. Klein's attorney first sent a letter to 185 Marcy Corp. on September 8, 2015,

pursuant to the Turnover Order, "to request that 185 Marcy Corp. issue . . . certificate[s] for shares of stock equaling 50% of the shares of 185 Marcy Corp." He also requested that Gutman confirm and authenticate the number of outstanding shares, and that the corporation advise Klein as to where he could pick up the shares to deliver them to the U.S. Marshal by September 10, 2015.

Counsel for 185 Marcy Corp. responded that day, attaching a standard form affidavit of Lost Stock Certificate and stating that, once it received "a fully executed affidavit, [it would] take the necessary steps to reissue certificates and arrange for their delivery to the U.S. Marshal for sale." Klein's attorney then responded to ask for advisement from 185 Marcy Corp. as to the affidavit, since stock certificates were not lost, but had never been issued.

Counsel for 185 Marcy Corp. informed Klein's attorney that the "only solution is to get an affidavit in the form provided" and that, if Klein believed the certificates were not provided, "then that should be incorporated into the affidavit." Counsel further stated that any dispute over the certificates would be incorporated into the terms of sale. On September 9, 2015, Klein's attorney responded, stating that "[she did not] imagine we will have a problem getting an affidavit from Klein that says he never received actual stock certificates." She reiterated that Klein did not have anything tangible to turn over, and that 185 Marcy Corp. would need to create the certificates; in addition, Klein's attorney stated her belief that 185 Marcy Corp. would require Gutman's affidavit as to the outstanding shares, in order to support the sale of stock.

The next day, on the date by which Klein was ordered to deliver the shares to the U.S. Marshal, counsel for 185 Marcy Corp. responded that there would be no affidavit

3

from Gutman. Instead, the "[c]orporation [would] issue shares based upon Mr. Klein's statement – either sworn or under penalty of perjury" and that Gutman's "position with respect to dilution or otherwise" would be preserved.

Over a week later, on September 18, 2015, a letter was sent via email to 185 Marcy Corp., stating that the corporation's insistence that Klein sign an affidavit "of lost shares [was] disingenuous," and that Gutman's deposition testimony (from a state court proceeding), the corporation's records, and the corporation's accountant had all confirmed that no shares were issued to Klein. Klein's counsel concluded that, "[i]n compliance with Judge Cogan's order, Klein [had] done all that [was] within his power to do to 'cause 185 Marcy Corp. to issue shares in [Klein's] name amounting to 50% of its outstanding shares.'" 185 Marcy Corp. responded, requesting that Klein's counsel review controlling statutes, which it alleged supported 185 Marcy Corp.'s adherence to "standard operating procedure" that Klein sign an affidavit "setting forth the foundation for his request" for the reissuance of stock certificates.

Plaintiffs requested a conference before me in October 2015 to address Klein's alleged failure to comply with the Turnover Order, but I denied that request. That same month, as described by Klein in his opposition papers, Goldwasser Management, Inc. ("GMI") accepted, on behalf of Washington Greene,

> an irrevocable assignment of Klein's shares of [185 Marcy Corp.], to be held in escrow by Rober Rimberg, Esq., GMI's attorney, until the date provided in the Agreement, in order to allow Klein time to complete three lawsuits pending in New York State Supreme Court, Kings County, to collect money damages, and to pay Washington [Greene] the amount of the judgment plus interest.

According to Klein, the agreement also allows for Klein to pay to extend the date provided in the undated assignment; as of now, the assignment remains in escrow until

4

December 2018. At no time have shares been issued by 185 Marcy Corp. in Klein's name.

## DISCUSSION

A court's inherent power to hold a party in civil contempt may be exercised only when the moving party proves (1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply. See King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995). The purpose of holding an individual in civil contempt is "to enforce compliance with an order of the court or to compensate for losses or damages." Powell v. Ward, 643 F.2d 924, 931 (2d Cir. 1981) (quoting McComb v. Jacksonville Paper Co., 336 U.S. 187, 191, 69 S. Ct. 497, 499 (1949)). "It need not be established that the violation was willful." Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Technologies, Inc., 369 F.3d 645, 655 (2d Cir. 2004); see also EEOC v. Local 638, 753 F.2d 1172, 1178 (2d Cir. 1985).

Neither party disputes that the Court's Order was "clear and unambiguous." Nor do the parties contest the facts surrounding the second element, noncompliance, despite Klein's statements that he has complied. Klein argues that, "in full compliance" with the Turnover Order, Klein wrote to 185 Marcy Corp. and requested that it issue certificates in Klein's name and to advise where the certificates could be picked up for delivery to the U.S. Marshal. In the words of Klein's counsel, Klein had "done all within his power to" comply with the Turnover Order.

Klein's insistence that he has complied with the Turnover Order conflates noncompliance with contempt. Noncompliance is but one fact that Gutman must prove before I may hold Klein

in contempt of the Turnover Order. Put simply, finding that Klein did not comply with the Turnover Order is necessary but not sufficient to hold Klein in contempt.

The facts underlying the parties' arguments prove Klein's noncompliance by clear and convincing evidence. The parties do not dispute that Klein did not deliver certain stock certificates to the U.S. Marshal within 7 days of the Turnover Order and, given the fact that 185 Marcy Corp. did not issue shares in Klein's name – which the parties do not dispute, either – there is no way Klein "cause[d]" 185 Marcy Corp. to issue shares in his name amounting to 50% of its outstanding shares pursuant to N.Y. Bus. Corp. Law § 508(e)." Klein therefore has not complied with the Turnover Order. [1]

Still, finding noncompliance by clear and convincing evidence does not necessarily lead to a finding of contempt. That is particularly the case here when, in order for Klein to comply with the Order, other entities must take action.

What Klein is essentially arguing, and the only question that remains, is whether Klein has diligently attempted in a reasonable manner to comply with the Turnover Order. Klein makes two arguments to support his view that he is not in civil contempt of the Turnover Order. First, Klein states that neither the Turnover Order, nor statute, nor bylaw, requires him to sign a "false affidavit" of lost stock. Second, Klein argues that, because he has allegedly now pledged

---

[1] Disputes over whether a party was in compliance with a Court Order are commonly found in instances where the Court Order has prohibited certain actions, and the defendant has taken form of action which may or may not run afoul to the Order. The party moving for contempt in those cases must prove that the taken action was, by clear and convincing evidence, the type of action prohibited by the order. See New York State Nat. Org. for Women v. Terry, 886 F.2d 1339, 1352 (2d Cir. 1989) (finding ample proof of noncompliance, after finding that party to be held in contempt was subject to Order and parties stipulated to facts of party's action, including participation in activities that were enjoined by the Order); see also McComb, 336 U.S. at 192, 69 S. Ct. at 500 (An ordered party cannot find "immunity from civil contempt because the plan or scheme which they adopted was not specifically enjoined. Such a rule would give tremendous impetus to the program of experimentation with disobedience of the law."). Unlike those cases, Klein does not dispute that the Order applies to him or that it required a specific result which did not come to pass.

6

his shares of 185 Marcy Corp. to GMI to satisfy Washington Greene's judgment, the Turnover Order is moot.

> I.  **Affidavit Required by 185 Marcy Corp.**

Klein asserts that the Turnover Order did not require him to sign a false affidavit, that is, the Lost Stock Certificate affidavit form sent by 185 Marcy Corp. In addition, Klein argues that any affidavit signed by Klein is unnecessary. Klein's argument is wholly disingenuous.

First, the record shows that 185 Marcy Corp. did not require a "false affidavit," as Klein deliberately mischaracterizes it, but rather a statement from Klein setting forth his claim of 50% ownership and his belief that the stocks were never issued – positions that Klein has continued to maintain throughout these proceedings. The contents of the emails between the parties show that 185 Marcy Corp. required an affidavit from Klein before issuing certificates and that, if Klein believed that the certificates were never provided to him (as opposed to being lost), "then that should be incorporated into the affidavit" and that it would "issue shares based upon Mr. Klein's statement." Yet despite Klein's counsel indication that "getting an affidavit from Klein that says he never received actual stock certificates" should not be a problem, Klein never signed an affidavit. The evidence makes it clear: all that stood in the way of the issuance of stock certificates was an affidavit of Klein that incorporated his belief that he was never issued shares but nonetheless owned 50% of the corporation's outstanding shares.

Klein states now that "[a]n affidavit is unnecessary" in light of the Court's Order and that there "is not now and never has been any question that Klein claims he owns 50% of [185 Marcy Corp.]" and the various filings in state court proceedings over the years.[2] But the inquiry I am

---

[2] Klein in fact argues that an affidavit is necessary, just not his own. Klein asserts that it is Gutman who should affirm how many shares must be issued. But that belief does not absolve Klein of his obligation to "cause 185

7

required to make on a motion for contempt is not what is necessary, but what is diligent and reasonable. See King, 65 F.3d at 1058; Powell v. Ward, 643 F.2d 924, 931 (2d Cir. 1981) (contempt requires finding that defendant "has not been reasonably diligent and energetic in attempting to accomplish what was ordered").

      Klein's actions here are neither reasonable nor diligent. 185 Marcy Corp. was willing to issue the shares after Klein provided an affidavit setting forth Klein's positions as to the percentage ownership and the reason for reissuance, i.e., that the certificates were never issued. Klein's refusal to commit to writing the very beliefs he espouses now in his opposition papers is far from diligent and reasonable. In fact, Klein's only attempt to comply with the Turnover Order was his initial request for the issuance of certificates. His refusal to take any further steps to cause 185 Marcy Corp. to issue stock certificates establishes Klein has not been reasonably diligent or energetic in attempting to comply with the Turnover Order. See Powell, 643 F.2d at 931.

## II.     Assignment of 185 Marcy Corp. Shares to GMI

      Klein also argues that the turnover of his shares in 185 Marcy Corp. became moot once Klein provided an "undated irrevocable assignment of his shares" to Washington Greene. This motion is the first I have heard of such an assignment, as Klein neither undertook this action at my direction, nor informed the Court via letter as to the existence of the so-called assignment.

      Klein is arguing that his compliance with the Turnover Order became unnecessary once the assignment of his shares was put in escrow in October 2015. Put more directly, Klein is arguing that he mooted the Turnover Order himself, once he unilaterally decided the best course

---

Marcy Corp. to issue shares in his name amounting to 50% of its outstanding shares." Klein is the party subject to the Turnover Order, and his attempts to comply are the focus of the current motion.

of action. The current arrangement, Klein asserts, "fully protects" Washington Greene's interests and uses the shares "to the best advantage" of Washington Greene. In Klein's formulation of how he should satisfy Washington Greene's judgment, Gutman is prevented from "prematurely" selling Klein's shares "for virtually no value." Should Gutman sell Klein's shares, it would have the effect of destroying Klein's standing to pursue a derivative action against Gutman on behalf of 185 Marcy Corp.[3] Klein therefore appears more interested in protecting his own interests than in protecting those of Washington Greene.

Whatever Klein's motivations, the fact remains that Klein ignored the directives of the Turnover Order when he devised his own method of dealing with his shares of 185 Marcy Corp. It is not up to Klein to decide whether the Turnover Order is best formulated for his purposes; Klein's disagreement with the providence of the Turnover Order should have been correctly disputed on appeal. Further, if Klein felt at any time that "there were extenuating circumstances or if the [Turnover Order] was too burdensome in operation, there was a method of relief apart from an appeal . . . [he] could have petitioned the District Court for a modification, clarification or construction of the order." McComb, 336 U.S. at 192, 69 S. Ct. at 500. When Klein utilized self-help rather than turning to the Court, he was "acting at [his] own peril." McComb, 336 U.S. at 192, 69 S. Ct. at 497; see also Maness v. Meyers, 419 U.S. 449, 95 S. Ct. 584 (1975). Klein is bound by the Turnover Order unless and until I modify the order or release him from it. See id.

---

[3] It does not go unnoticed that GMI is the very entity that intended to intervene in this action prior to my entering the Turnover Order, nor that the shares themselves are not in escrow, only an undated assignment of those shares. The first opportunity the assignment will be executed, it appears, is December 2018, with the option for extension – conveniently enough time for Klein to retain legal title for the purpose of standing in his derivative suit against 185 Marcy Corp. I will not comment on whether Klein, or any party to this action, has abused the courts by exploiting one court proceeding against another. All that matters for the purposes of this motion is that Klein has not caused 185 Marcy Corp. to issue shares, or otherwise turned over the certificates to the U.S. Marshal, and the reasons as to why he did not comply with the Turnover Order.

### III.     Impossibility as a Defense

If Klein had intended to argue that it was or is impossible for him to comply with the Turnover Order, such an argument would also fail.  Klein implies that he is unable to turn over shares amounting to 50% ownership in 185 Marcy Corp., or to cause the corporation to issue shares amounting to 50% ownership, because (1) the shares are now in escrow and pledged to satisfy Washington Greene's judgment, and (2) the corporation would not have issued those shares in any event.  A person cannot be held in civil contempt if his compliance is "factually impossible," Badgley v. Santacroce, 800 F.2d 33, 36 (2d Cir. 1986), and "a defendant may assert a *present* inability to comply with the order in question."  United States v. Rylander, 460 U.S. 752, 757, 103 S. Ct. 1548, 1552 (1983) (emphasis in original).  The defendant however, bears the burden of production, see id., and must "establish his inability clearly, plainly, and unmistakably."  Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995).

Klein has not met that burden here.  Klein does not dispute that he is still the legal owner of shares in 185 Marcy Corp., notwithstanding that the parties still dispute the percentage of his ownership.  Nor does Klein's escrow plan now make it impossible for Klein to cause 185 Marcy Corp. to issue stock certificates in his name amounting to 50% ownership.  Klein has presented no evidence that he is unable to sign the required affidavit such that 185 Marcy Corp. will issue stock certificates.  Klein has the present ability, on the evidence presented, to "cause 185 Marcy Corp. to issue shares in his name amounting to 50% of its outstanding shares."  However difficult Klein has made compliance, and despite any collateral effects his compliance may now have on other agreements, Klein has not established "clearly, plainly, and unmistakably" that it is impossible for him to comply with the Turnover Order.

Klein also does not establish impossibility by presenting his belief, however accurate, that 185 Marcy Corp. would not issue shares amounting to 50% ownership, even if he had provided the requested affidavit. What 185 Marcy Corp. would have done when presented with Klein's affidavit is entirely speculative and beside the point. First, Klein is the party to which the Turnover Order is directed, and he is the one obligated to comply with its directives. The Turnover Order did not direct 185 Marcy Corp. to conduct an execution sale, much less to conduct it in a particular way – 185 Marcy Corp. was not ordered to do anything at all.

Second, had Klein signed the contemplated affidavit and 185 Marcy Corp. thereafter refused to issue those shares, Klein could present such actions as evidence that he had diligently attempted to comply, and that any noncompliance with the Turnover Order was through no fault of his own. That is, the corporation's failure to issue the shares may have undermined a finding of contempt overall, but it has no effect on whether Klein diligently attempted to comply. Instead, Klein refused to take what was a reasonable request by 185 Marcy Corp. under N.Y. Bus. Corp. Law § 508(e) – the very statute referenced in the Turnover Order. His failure to attempt compliance is not excused by his speculation that any effort he makes to cause 185 Marcy Corp. to issue those shares would have been in vain.

The failure of Klein to take any necessary steps, aside from merely requesting that the corporation issue stock certificates, evidences that he did not diligently attempt to comply with the Turnover Order in a reasonable manner. He has not sought any relief from the Turnover Order, whether before me or on appeal, and he has not proven that his compliance with my Turnover Order is impossible.

## CONCLUSION

Klein is therefore in contempt of my September 3, 2015 Turnover Order. Klein is ORDERED to comply with the Turnover Order within seven days. Should 185 Marcy Corp. require Klein to execute an affidavit for the issuance of new stock certificate, Klein must do so and take whatever other actions are reasonable to diligently attempt to comply with my Orders.

As a sanction for failure to comply with the Turnover Order until this point, and to compensate the injured parties, Klein is further ORDERED to pay Gutman's reasonable attorneys' fees in bringing this motion and 185 Marcy Corp.'s reasonable attorneys' fees in endeavoring to issue shares.

A hearing will be held on February 12, 2016 at 11:00 am in Courtroom 8D South, which Klein must attend in person. At the hearing, if Klein has still not complied with the Turnover Order, I will consider coercive sanctions. Because there is such a large judgment outstanding against Klein, the Court has concerns that additional monetary sanctions may not be adequate to compel compliance. Klein is therefore advised that continued defiance of this Court's Orders may result in his being taken into custody by the United States Marshal at the conclusion of the hearing until such time and for such duration as compliance occurs.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
February 3, 2016